### AMERICAN TOBACCO CO. v. POLACSEK.

(Circuit Court, S. D. New York. May 5, 1909.)

**1.** TRADE-MARKS AND TRADE-NAMES (§ 93*)—NATURE OF ARTICLE—EVIDENCE.

Evidence *held* to justify a finding that complainant's tobacco to which the trade-mark in controversy was attached was suitable for smoking and might be so used in cigarettes.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 93.*]

**2.** TRADE-MARKS AND TRADE-NAMES (§ 93*)—INFRINGEMENT—CUSTOM.

In a suit to restrain the infringement of a trade-mark attached to tobacco, the fact that manufacturers of tobacco had customarily allowed their trade-name for a smoking brand to be used by a manufacturer of cigarettes is irrelevant, unless the infringing use has been open, notorious, and acquiesced in by complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 93.*]

**3.** TRADE-MARKS AND TRADE-NAMES (§ 93*)—INFRINGEMENT—EVIDENCE.

In a suit to restrain the infringement of a trade-name used in the sale of tobacco, the introduction of two packages of tobacco having the same name and apparently manufactured by different individuals is irrelevant

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

when unaccompanied by proof of the circumstances surrounding the origin and use of the packages.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 93.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 84*)—DESTRUCTION—CUSTOM.

A valid trade-mark cannot be destroyed by proof of a custom to disregard trade-marks generally.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 84.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 8*)—"VIRGIN LEAF."

The trade-name attached to complainant's tobacco "Virgin Leaf" was not synonymous with "Virginia Leaf," nor was it descriptive of the tobacco used, but was an arbitrary, fanciful name intended to denote the purity of the tobacco, and was therefore a valid trade-name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 12; Dec. Dig. § 8.*]

6. TRADE-MARKS AND TRADE-NAMES (§ 61*)—APPLICATION OF NAME TO DIFFERENT GOODS.

A trade-name used by a manufacturer of smoking and chewing tobacco cannot be appropriated by a manufacturer of cigarettes.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 76; Dec. Dig. § 61.*]

7. TRADE-MARKS AND TRADE-NAMES (§ 65*) — INFRINGEMENT—INTENT TO MISLEAD.

A competitor may not use a name, whether fictitious or real, a description, whether true or not, which is intended or calculated to represent to the world that his business is that of another, and by such fraudulent misstatements deprive the latter of business which would otherwise come to him.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 64; Dec. Dig. § 65.*

Misleading or false labels, see note to Raymond v. Royal Baking Powder Co., 29 C. C. A. 250.]

8. TRADE-MARKS AND TRADE-NAMES (§ 61*)—INFRINGEMENT—INJUNCTION.

Where complainant and its predecessors for over 60 years had used the trade-name "Virgin Leaf" to designate a brand of fine-cut tobacco, and defendant used such a name in connection with his sale of cigarettes, repudiating any intent to deceive the public, but claiming his use of the word to be a substitute for "Virginia" and descriptive of the tobacco of which the cigarettes were made, complainant was entitled to a preliminary injunction, defendant being relegated to his right to use the word "Virginia" instead of "Virgin."

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 76; Dec. Dig. § 61.*]

On Motion for a Preliminary Injunction.

John Hall Jones, for complainant.
Charles Dushkind, for defendant.

COXE, Circuit Judge. The bill alleges, and the affidavits sustain the allegation, that for over 60 years the complainant and its predecessors, from whom it derives title, had used as a trade-mark the words "Virgin Leaf" to designate a brand of fine cut tobacco, suitable for smoking and chewing, manufactured by them.

In 1863 David H. McAlpin, who founded the copartnership of D. H. McAlpin & Co., bought the trade-mark of John Cornish who

originated it and transferred it and the good will of the business to the said firm. During the same year the package in which the tobacco was sold was altered and a gold tobacco leaf was added, interposed between the words "Virgin" and "Leaf." In this form the trade-mark was used by McAlpin & Co. and by the complainant, to whom it was transferred in 1901, until the present day. Thus for 46 years the words "Virgin Leaf" with a pictorial representation of a tobacco leaf between the words, has been used to designate the tobacco manufactured by McAlpin and, since 1901, by the complainant. Large sums were spent in advertising "Virgin Leaf" until it became well known and popular and was bought and sold under this name alone by dealers and consumers. A person desiring this brand had only to ask the salesman for "Virgin Leaf" and he would be furnished the McAlpin brand. It is alleged that this tobacco is not only suitable for chewing and smoking but that it may be rolled into cigarettes. In short, the complainant and its predecessors have for over half a century enjoyed the uninterrupted, exclusive and undisturbed use of the trade-mark "Virgin Leaf" to designate the tobacco manufactured by them until it acquired a significance synonymous with the name of the maker. "Virgin Leaf" meant McAlpin's tobacco and nothing else.

The defenses are: First: That the complainant's trade-mark has always been used to designate chewing tobacco and has never been used in connection with cigarettes. Second: That it has long been the custom in the tobacco business to use the same name for tobacco in its various forms when made by different manufacturers. For instance, if A uses the name "Oriflamme" in connection with smoking tobacco B may with propriety use the same name to designate his chewing tobacco, C to designate his cigarettes and D to designate his cigars. Such is the alleged custom. Third: That "Virgin Leaf" means "Virginia Leaf" and the two names are used synonymously to indicate tobacco grown in the state of Virginia.

I think the weight of testimony is to the effect that though the complainant's tobacco is not used for cigarettes it is suitable for smoking purposes and is so used. It may be rolled into cigarettes, though the proof that this has been done, except in sporadic instances, is most unsatisfactory. As to the second defense—assuming that such testimony as is presented by the defendant would be sufficient, in any circumstances, to establish a custom, it is manifest that the mere fact that manufacturers of tobacco have allowed their trade-names for a smoking brand to be used by manufacturers of cigarettes is of no relevancy whatever unless it be shown that the infringing use was open, notorious and acquiesced in by the owner of the mark. If on the other hand he knew nothing of the infringement or had granted a license to use the mark in a restricted form the proof is equally ineffectual.

The introduction of two packages of tobacco having the same trade-name and apparently manufactured by different individuals, is absolutely of no relevancy whatever unaccompanied by proof of the circumstances surrounding the origin and use of the respective packages. For illustration take the trade-name "Recruit." Two packages

are submitted, one containing "Recruit granulated for pipe and cigarette," the other "Recruit, little cigars." There is no proof, save a declaration printed on one of the packages as to who was the manufacturer of either. Let us assume that John Doe manufactured the granulated smoking tobacco and that it was made prior to the appearance of the little cigars. Who first used the word "Recruit"? If it were John Doe, did he use it long enough to establish a trade-mark? Did he have a right to use it? Did he relinquish that right? Were the little cigars made with his knowledge and consent? All of these questions must be answered in favor of the defendant's contention before he would be even in a position to offer the exhibits in evidence as tending to establish a custom. But to my mind the contention that a valid trade-mark can be destroyed by proof of a custom to disregard trade-marks generally is wholly without merit. I suppose it will be conceded that the right of the owner of a valid patent to proceed against an admitted infringement cannot be defeated by proof that there is a well-known custom to infringe patents by those engaged in manufacturing devices covered thereby. It is probable that an offer to prove such a custom would not proceed far beyond its rudimentary stage. The short answer to such a supposed defense is that the patentee has never waived any of his rights, that his patent is valid and the infringement admitted. He cannot be deprived of his right to a decree because other inventors have permitted their patents to be infringed with impunity. The same principle should apply to trade-marks. The fact, if it were true, that others in the same business have allowed their marks to be infringed should not be permitted to destroy a trade-mark which for 60 years has designated the owner's business and has been uniformly respected by the trade.

The testimony fails to establish the third defense. "Virgin Leaf" is not synonymous with "Virginia Leaf" and is not descriptive of the tobacco used. It is an arbitrary fanciful name intended to denote the purity of the tobacco. If the defendant is not seeking to avail himself of the reputation which attaches to the complainant's tobacco, if, as he says, he only wishes the advantages which flow from the use of Virginia tobacco, he has only to substitute "Virginia" for "Virgin" and the complainant will have no cause for complaint.

It would seem therefore, that the only question worthy of debate is the one suggested by the first defense. Can the trade-mark of a manufacturer of smoking and chewing tobacco be appropriated by the manufacturer of cigarettes? I incline to the opinion that it cannot be. A trade-mark is a guaranty that the goods to which it is attached are made by its owner. If the owner has a high character for honesty, good workmanship and fair dealing his mark stands for all of these qualities. Those who have been accustomed to his goods see his mark and buy, knowing that they will not be defrauded. Whether a manufacturer confines himself to smoking tobacco, chewing tobacco or cigarettes, he is still in the tobacco business just as one is in the clothing business whether he makes coats, waistcoats or trousers, just as one is in the whisky business whether he makes Rye or Bourbon. A consumer who believes in McAlpin's tobacco, seeing "Virgin Leaf" cigarettes on the market, will naturally think that they are the product

of the McAlpin factory, precisely as if "D. H. McAlpin & Co." had been printed on the package.

The precise question was decided in the case of Carroll v. Ertheiler (C. C.) 1 Fed. 688. The complainant had adopted the word-symbol "Lone Jack" to sell smoking tobacco manufactured by him. The defendant was enjoined from selling "Lone Jack" cigarettes, the court observing:

"Cigarettes consist of smoking tobacco, similar in all respects to that used in pipes. The circumstance that a longer 'cut' than that commonly used in pipes is most convenient for cigarettes is not important, nor that the tobacco is smoked in paper instead of pipes. It may be used for either purpose, and is all embraced in the term 'smoking tobacco.' We do not believe the public or the trade draw such a distinction as the defendant sets up."

The right which every man possesses to have his business protected is well expressed in the case of Levy v. Walker, L. R. 10 Ch. D. 447, as follows:

"You must not use a name, whether fictitious or real—you must not use a description, whether true or not, which is intended to represent, or calculated to represent, to the world that your business is my business, and so, by fraudulent misstatement deprive me of the profits of the business which would otherwise come to me."

See, also, Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526; Hilson Co. v. Foster (C. C.) 80 Fed. 896; 28 Am. & Eng. Enc. of Law, p. 422.

The logic of the situation may be briefly stated. Either the defendant is endeavoring to profit by the reputation of McAlpin's tobacco or he is not. If it be true that he is making this attempt he should be stopped in limine, if, on the other hand, he is only selling his goods on their merits he does not need the same trade-mark as the complainant.

To continue its use will only serve to increase the confusion which is injurious to both, assuming that both are desirous of disposing of their tobacco on its merits.

The motion is granted.