PORT CHESTER WINE & LIQUOR SHOP, INC., and JOSEPH GIOFFRE, Appellants, v. MILLER BROS. FRUITERERS, INC., Respondent.

Second Department, January 28, 1938.

*Benjamin I. Tunick,* for the appellants.

*Herman N. Goldowitz,* for the respondent.

*Thomas Kiernan* [*Ezra Cornell* and *Orison S. Marden* with him on the brief], for Calvert Distillers Corporation and Seagram Distillers Corporation, as *amici curiæ.*

CARSWELL, J.   The sole question here concerns the right of these plaintiffs to maintain this action to enforce rights under a contract made pursuant to the so-called Fair Trade Act (Laws of 1935, chap. 976).   This statute authorizes vertical pricefixing arrangements between a producer or owner of goods and a vendee where those goods are identified and bear a trade name, brand or mark. The Special Term has held that the violation of such arrangements by a competing retailer or price-cutter may not be enjoined by a retailer; it may only be the subject of redress in a suit by the producer or vendor.

Plaintiffs are retailers of various brands of liquor in the village of Port Chester. They made contracts with distillers whereby they purchased certain named brands of liquor with the obligation to sell at prices fixed by the producer. The agreements recite that they are made under the Fair Trade Act and are expressly limited to sales in intrastate commerce.

Defendant is a competing retailer. It has, so it is alleged, sold and is selling specified brands of liquor at prices below those fixed by the producers under the contract with the plaintiffs. Plaintiffs seek to enjoin the defendant from selling these specified brands at prices below those fixed by the producers pursuant to the contract. They claim they are suffering damage as a consequence of such price-cutting by defendant.

The ground of the Special Term's denial of the motion for a temporary injunction seems to be that the plaintiffs do not possess a property right in the good will of the trade name, brand or mark of the specified articles such as would enable them to maintain this action for claimed damages arising from defendant's price-cutting, and that such a property right is possessed only by the producer or wholesale vendor of the articles in the first instance.

The Fair Trade Act here involved is substantially identical with those enacted in forty-two States of the Union. Its validity was successfully challenged as violating both the Federal and State Constitutions in *Doubleday, Doran & Co. v. Macy & Co.* (269 N. Y. 272). Subsequently an identical Illinois statute was unanimously sustained as valid in *Old Dearborn Co. v. Seagram Corp.* (299 U. S. 183). Thereupon the New York statute was held valid in *Bourjois Sales Corp. v. Dorfman* (273 N. Y. 167).

The statute in its title purports to protect " trade mark owners, distributors and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trade mark, brand or name." It should be noted that it does not purport to limit protection to the owners of the trade mark, brand or name and the public, but that it includes " distributors." Usually the term " distributor " connotes a wholesaler or jobber of goods, but it may include a retailer. However, it is not necessary to hold that the use of the word " distributor " is determinative of the legislative purpose to protect other than owners of trade marks, brands or names and the public, because in section 2 of the statute, which is the vital one for us to consider, it is expressly provided that price-cutting " is unfair competition and is actionable at the suit *of any person* damaged thereby." Are plaintiffs within the latter provision?

Section 1 provides that a contract for the sale or resale of a commodity bearing a trade name, brand or mark in fair and open competition with commodities of the same general class, and which contains provisions fixing the price at which the resale may be had, shall not be deemed in violation of law.

This section made no change in the common law as declared in this State in cases which concerned vertical price-fixing in respect of commodities in intrastate commerce having a brand or name evidencing good will. The right, therefore, of a producer or vendor to enforce such a contract in respect of articles in intrastate commerce being established, section 1 created no new cause of action. A statute was not needed to enable a producer to protect himself by way of enforcing his property rights in his good will as evidenced by his trade name, brand or mark. (*Bourjois Sales Corp.* v. *Dorfman*, 273 N. Y. 167, 170, 171; *Marsich* v. *Eastman Kodak Co.*, 244 App. Div. 295; affd., 269 N. Y. 621; *Ingersoll & Brother* v. *Hahne & Co.*, 89 N. J. Eq. 332, 335; 108 A. 128.)

Section 2 provides that the selling of such a commodity at less than the price stipulated in a contract made pursuant to section 1, " whether the person  *  *  *  selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby." The foregoing section created a new cause of action. It evinced a legislative purpose to have that action inure to the benefit of others than the producer, who already had a legal right to make such a contract and to enforce it, of which right section 1 was merely declaratory. The Legislature used general all-inclusive language and said that " any person " damaged thereby might maintain an action. It did not state, as it readily could have done, that the acts specified were actionable at the suit of the producer or wholesale vendor only.

The wisdom or unwisdom of permitting vertical price-fixing arrangements and interdicting price-cutting activities is a matter for the Legislature and not the Judiciary to determine. The facilities of the Legislature to inform itself as to whether such practices are sound or unsound economics are more ample than are those of the courts. Which course is sound public policy is, therefore, for the Legislature. (*People* v. *Charles Schweinler Press*, 214 N. Y. 395; *Old Dearborn Co.* v. *Seagram Corp.*, 299 U. S. 183, 195, 196.) The manner of furthering its purpose is likewise to be determined by the Legislature. It has specified in this statute certain ways of enforcement.

In interpreting a statute it is the duty of courts to effectuate, and not frustrate, legislative purpose. Just as that purpose should not be nullified except in obedience to the stern compulsion of a

constitutional mandate or provision, so likewise that legislative purpose should not be fettered, hobbled or rendered less efficacious by judicial interpretation where the Legislature has expressed its purpose with reasonable certainty. To interpret section 2, despite its clarity, so as to limit the maintenance of an action to enforce rights thereunder to the producer or wholesale vendor and to exclude the vendee or retailer from the right so to do would be in disregard of its all-inclusive language and render the statute of less efficacy in furthering the plain legislative purpose of preventing price-cutting practices with relation to identified commodities which have been made the subject of a vertical price-fixing arrangement pursuant to the statute.

The one who to a greater degree bears the brunt or burden as a consequence of price-cutting by a retailer is the competing retailer who is observing his contract obligations. Such a retailer suffers proportionately to a greater extent than does the producer. After all, even the price-cutter must directly or indirectly get his goods to sell on the price-cutting basis from the producer, while the retailer who observes his contract obligations is deprived of his sales and his good repute in the neighborhood and is damaged as a consequence of the price-cutting acts of his competitors.

But it is said that such a retailer has no property interest in the trade name, brand or mark of the article sold, and that it was because the producer or vendor had such a property interest that the validity of the statute was sustained. Certain language in *Old Dearborn Co.* v. *Seagram Corp.* (299 U. S. 183, 193) is invoked to sustain this contention. It was there said by SUTHERLAND, J.: " In the second place, § 2 does not deal with the restriction upon the sale of the commodity *qua* commodity, but with that restriction because the commodity is identified by the trade-mark, brand or name of the producer or owner. The essence of the statutory violation then consists not in the bare disposition of the commodity, but in a forbidden use of the trade-mark, brand or name in accomplishing such disposition. *The primary aim of the law is to protect the property — namely, the good will — of the producer, which he still owns.* The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself." (Italics ours.)

It is true that it was said, " The primary aim of the law is to protect the property — namely, the good will — of the producer, which he still owns." But it was not said to be the sole aim. It was not the sole aim. The statutory aim was three-fold: to protect " trade mark owners, distributors and the public." Moreover, the reference to " primary aim " does not preclude one other than

the producer from acquiring by contract an interest in that self-same good will represented by the trade name, brand or mark upon the commodity sold to the retailer for resale. That a vendee or distributor has a property interest in such a good will has been recognized. (*Triner Corporation* v. *McNeil*, 363 Ill. 559, 579; 2 N. E. [2d] 929, per WILSON, J.)

This view is in accord with the legislative purpose evinced in the title of the act, to wit, to protect the public, the producer and the distributor. Accordingly, when a competitor sells a specified branded article in violation of the retailer's limited property right in the good will acquired by contract, the injury or damage falls directly upon the retailer with greater proportionate force than upon the producer who has shared with the retailer by contract the property right in the good will. There is no compelling reason why the devolution by contract of a limited share in the property right should not be recognized. Certainly, solicitude for the one who by this statute is branded as a wrongdoer does not qualify as a reason. By recognizing this limited share in the property right, the purpose of the Fair Trade Act to protect that property right, no matter on whom it may devolve in whole or part, will be effectuated in full vigor. This view that the producer is not the only one whose good will may be injured is recognized by SUTHERLAND, J., in the *Old Dearborn* case (p. 195): " There is a great body of fact and opinion tending to show that price cutting by retail dealers is not only injurious to the good will and business of the producer *and distributor* of identified goods, but injurious to the general public as well." (Italics ours.)

Hence plaintiffs, having obtained by contract an interest in the property rights evidenced by the trade name, brand or mark, and suffering damage as a consequence of defendant's price-cutting activities, may maintain this action to protect that property interest, as well as for the further reason that they come within the broad general language of section 2, where such acts of the defendants are declared to be actionable " at the suit *of any person* damaged thereby." The right to maintain such an action by a distributor with no greater property rights in the good will in a trade name on identified goods than are possessed by the plaintiffs was recognized without challenge in *Triner Corporation* v. *McNeil* (363 Ill. 559; 2 N. E. [2d] 929). The Illinois statute there involved was identical with the New York Fair Trade Act, the court recognizing (p. 579) that a distributor had a property interest in the good will represented by the trade name, brand or mark, on the goods he acquired for resale under contract pursuant to a vertical price-

fixing agreement in conformity with the Fair Trade Act. That decision was affirmed (299 U. S. 183). That case requires that the right of the plaintiffs herein to maintain this action be sustained.

It is asserted, however, that such a view in effect violates the Donnelly Act (General Business Law, § 340), which invalidates, *inter alia*, an arrangement between dealers to fix prices of commodities. There is no force to such a contention. Price-fixing or the creation of a monopoly by contract was regarded as contrary to the spirit and the policy of the common law where the commodities involved were necessaries of life. The scope of that common-law doctrine was extended by statutes. It concerned horizontal price-fixing. The Donnelly Act represents such an extension. It invalidates horizontal price-fixing arrangements of " any article or product " marketed or sold in this State. The Sherman Anti-Trust Act (26 U. S. Stat. at Large, 209, ch. 647; U. S. Code, tit. 15, §§ 1–7) also extended the doctrine to any article that might be the subject of trade or commerce in interstate transactions. The State enactment assumed to ban horizontal price-fixing arrangements only, that is, contracts between dealers or contracts between manufacturers or producers of particular commodities. It did not purport to concern itself with vertical price arrangements based on property rights in good will evidenced by a trade name, brand or mark on a commodity in intrastate commerce. (*Marsich* v. *Eastman Kodak Co.*, 244 App. Div. 295, 296, and cases cited therein; affd., 269 N. Y. 621.)

The Fair Trade Act, so interpreted, entitles a retailer to seek redress under a vertical price-fixing arrangement and is not in conflict with the provisions of the Donnelly Act, which bans horizontal price-fixing. The Legislature has seen fit by the later enactment to declare vertical price arrangements of a specified character to be valid; therefore, such arrangements must be construed to be without the language of the earlier Donnelly Act.

Whether a vertical price-fixing arrangement shall be declared to be valid while a horizontal price-fixing arrangement is banned as invalid, is a matter for the Legislature.

The order denying plaintiffs' motion for an injunction *pendente lite* should be reversed on the law, with ten dollars costs and disbursements, and the motion granted. The amount of the bond to be furnished will be fixed in the order.

HAGARTY, DAVIS, ADEL and CLOSE, JJ., concur.

Order denying motion for an injunction *pendente lite* reversed on the law, with ten dollars costs and disbursements, and motion granted. The amount of the bond will be fixed in the order. Settle order on notice. [See 254 App. Div. 567.]