## CALVERT DISTILLERS CORPORATION v. STOCKMAN.

District Court, E. D. New York.
Jan. 17, 1939.

74

White & Case and Orison S. Marden, all of New York City (Orison S. Marden, of New York City, of counsel), for plaintiff.

Murray Stockman, of Forest Hills, N. Y., for defendant.

MOSCOWITZ, District Judge.

This is an application made by Calvert Distillers Corporation, the plaintiff herein,

restraining Martin Stockman, the defendant herein, his servants, agents and employees from advertising, or offering for sale or selling alcoholic liquors distributed by plaintiff, its parent and affiliated corporations, at prices below the minimum prices fixed by the plaintiff for the resale of merchandise at retail, pursuant to existing so-called Fair Trade contracts in force in this State between plaintiff and most of the retail liquor dealers.

The authority for this action is Section 2 of the Feld-Crawford Act of the State of New York (Chapter 976 of the New York Laws of 1935, Unconsol.Laws, § 2202), which declares that the cut-rate sales of branded products by one who has notice of "Fair Trade" contracts fixing the resale prices of such products amounts to unfair competition.

Plaintiff is the owner and distributer of alcoholic liquors which bear the trademarks, brands and names of the plaintiff and its affiliated corporations. Plaintiff's brands are well known to the public. The plaintiff has expended and is expending large sums of money in advertising and selling its product.

Pursuant to Section 1 of the Fair Trade Act, known as the Feld-Crawford Act, Unconsol.Laws, § 2201, plaintiff has entered into standard contracts with retail dealers throughout New York State, which agreements fix the resale prices of the alcoholic liquors sold and distributed by the plaintiff to the public in accordance with schedules of prices issued from time to time by the plaintiff.

It is conceded that on or about March 9, 1937, defendant received written notice from the plaintiff of the existence of the agreements and delivered to the defendant a copy of the standard agreement annexed to the complaint, marked Exhibit A, together with a copy of the minimum retail price schedule then in force. Furthermore, it appears that employees of the plaintiff have on several occasions notified defendant of the existence of "Fair Trade" contracts and of the minimum prices of plaintiff's brand of products. Plaintiff has issued price schedules from time to time, fixing the minimum resale prices of its brand of products.

Defendant operates a large liquor store at 71-47 Austin Street, Forest Hills, Long Island. Although he sells the plaintiff's product, he has refused to execute one of the standard agreements. It is not in dispute that the defendant has been engaged in selling plaintiff's liquor at prices lower than the prices fixed by the plaintiff.

Judge Shientag, in the cases of Calvert Distillers Corporation v. Nussbaum Liquor Store, Inc., and Seagram Distillers Corporation v. Nussbaum Liquor Store, Inc., 166 Misc. 342, 2 N.Y.S.2d 320, in a well-considered opinion, has formulated certain "rules" which he deemed applicable to the issues in those cases which were brought under Section 2 of the Feld-Crawford Act. These "rules" are so well formulated that I shall adopt the same as applicable to this case. They are as follows [page 324]:

"1. The suit may be instituted by the owner or holder of the brands or marks or by one having the exclusive right to use such marks in a given territory.

"2. The resale price sought to be maintained must be a fixed price or a stipulated price, not merely a price suggested or recommended by the owner or producer.

"3. Notice of the fixed prices and of changes thereof must be given to all who are sought to be bound thereby, and this applies not alone to direct changes in prices, but also to changes in discounts and other general business practices reflected in the price of the commodity.

"4. To invoke the Fair Trade Act it is unnecessary that agreements providing for the maintenance of fixed resale prices be made with all or substantially all of the dealers in a commodity. It is enough if there are agreements made, indicating an intention to resort to the provisions of the act. Nor is it necessary for the owner or producer to sell directly to the retailer; he may deal with a wholesaler who in turn sells to the retailer.

"5. A dealer who does not sign a price maintenance agreement is just as amenable to the act as one who does sign. Before any relief may be obtained against him, however, it must appear that he had notice of the fixed prices and of all changes thereof at the time of sale.

"6. Implicit in the statute is the requirement that the prices fixed for resale by retailers be uniform in any one competitive area. Implicit also is the requirement that there shall be no unfair discrimination in prices to retailers. That does not preclude discounts or fair variations in prices having a general application in the trade

based, for example, upon quantity sold or time of payment.

"7. A producer or owner invoking the statute is not required as a matter of law to resort to legal process against every violator of its provisions or of the contracts made pursuant thereto before he can enforce a remedy against any one violator. * * * At least where he does not resort to legal action, the producer is required to use reasonable diligence to see to it that none of his products continue to be sold to a retailer who cuts prices after the producer has notice of such violation. In the last analysis it all comes down to a question of whether the producer or owner by his acts or conduct, whether of commission or omission, may be said to have waived or abandoned his rights, with respect to all retailers, under the statute or agreements made thereunder. He will not be allowed directly or indirectly to discriminate unfairly. In availing himself of the benefits of the statute he must accept its burdens. The Fair Trade Act in its very essence calls for uniform enforcement without discrimination or favoritism. The producer cannot act arbitrarily in enforcing observance of fixed prices. There must be a sincere and diligent effort to prevent price cutting of branded products through legal process if necessary.

"8. A dealer not signing a fair trade agreement may not take advantage of the producer's alleged breach of contracts made with others unless those violations amount to improper discrimination, unfair business practices or indicate an acquiescence in the unlawful cutting of prices or a waiver or abandonment of rights under the statute.

"9. The only practical method of securing any kind of enforcement of the statute as now drawn is by way of injunctive relief. To obtain such relief under the statute it is unnecessary, generally speaking, for the owner or producer to prove the actual damage sustained. It is sufficient to establish that there is in existence a 'good will' to be protected and injury thereto will ordinarily be presumed if there is unlawful price cutting."

The purpose of the Act was to prevent disastrous price cutting and the destruction of the good will of a business. Its constitutionality is no longer open to question. Bourjois Sales Corporation v. Dorfman, 273 N.Y. 167, 7 N.E.2d 30, 110 A.L.R. 1411. The solicitors for the plaintiff in their brief state that the Fair Trade Acts are now the law in forty-two states.

The defendant contends that the plaintiff is not entitled to injunctive relief on the following grounds:

"1. That the plaintiff has prior to the commencement of the action sold and still continues to sell the liquors described in the complaint and moving affidavits at prices below those mentioned and described in its 'Fair Trade' contracts, and thus enters into unfair competition with the defendant herein.

"2. That the plaintiff is discriminatory in its dealings with various retail dealers in that it allows different discounts to different dealers; in that it sells its liquors at different prices to different dealers, in that it fails to use due diligence in maintaining uniform prices; in that it favors certain liquor stores in specified localities.

"3. That the plaintiff has failed to use due diligence in enforcing its so called 'Fair Trade Agreements', and that the plaintiff does not use good faith in its attempt to enforce the so called 'Fair Trade Agreements.'"

There is no evidence before the Court justifying the contentions made by the defendant. The fact that other dealers, without plaintiff's permission, have cut prices, cannot justify the defendant in so doing. Actiengesellschaft, etc. v. Amberg, 3 Cir., 109 F. 151; American Tobacco Co. v. Polacsek, C.C., 170 F. 117; Calvert Distillers Corporation v. Nussbaum Liquor Store, Inc., supra; Calvert Distilling Co. v. Brandon, D.C., 24 F.Supp. 857.

If the defendant has knowledge of any sales at cut prices, he has a legal remedy and may procure an injunction and damages. Port Chester Wine & Liquor Shop v. Miller Bros., 253 App.Div. 188, 1 N.Y.S.2d 802.

While the plaintiff did proceed against every retailer found to be cutting prices, it was not required to do so. National Distillers Products Corporation v. Columbus Circle Liquor Stores, Inc., 166 Misc. 719, 2 N.Y.S.2d 319. Plaintiff has apparently done all it could do to stop price cutting and it has brought actions in all cases that were called to its attention, seeking injunctions.

No harm could come to the defendant by the granting of an injunction herein. Great harm can come to the plaintiff if an

injunction is denied. This case can be tried at once as the calendar is practically up to date.

Motion for an injunction will be granted. The amount of the bond will be fixed upon the settlement of the order.

Settle order on notice.