## Broxmeyer et al. v. Polikoff, etc.

*S. Walter Foulkrod, Jr.*, for plaintiffs.
*Peter P. Zion*, for defendant.

OLIVER, P. J., August 20, 1940.—The question for determination is whether, under the Pennsylvania Fair Trade Act of June 5, 1935, P. L. 266, a retailer has a right of action against a competing retailer who has knowingly sold trade-marked products at less than the price therefor stipulated in contracts entered into pursuant to section 1 of the act.

Plaintiffs and defendant are competing retail druggists, engaged in business in the same neighborhood in Philadelphia. In their bill of complaint plaintiffs allege that the producers of certain trade-marked commodities entered into written contracts, pursuant to the provisions of the Pennsylvania Fair Trade Act, supra, with various retailers in Pennsylvania to whom their products had been sold, fixing the minimum retail price of each of these commodities; that defendant was advised of the existence of these contracts and of the minimum retail prices contained therein; that the prices so fixed are reasonable and fair; that these products are in fair and open competition with other commodities of the same general class produced

by others; that defendant has knowingly and wilfully sold these products at less than the price stipulated in the contracts. Plaintiffs further allege that at all times they have sold these products in accordance with the price so fixed; that the sales by defendant below the minimum prices have caused damage to plaintiffs' business, in that plaintiffs have lost the profits on sales ordinarily and customarily made by them, but now being made by defendant as a result of his reduced prices; that the amount of damage thus suffered is not definitely ascertainable; and that these sales by defendant constitute unfair competition. Plaintiffs, therefore, pray for an injunction restraining defendant from selling or offering for sale these products or any other commodity at less than the prices fixed by the contracts with the producers thereof, under the act, and of which prices defendant has notice.

Defendant filed preliminary objections to the bill, in which he contends chiefly that, under the act, plaintiffs have no status to maintain the present suit.

Section 1 of the Fair Trade Act of 1935 legalizes contracts fixing the resale price of any commodity "which bears . . . the trade-mark, brand or the name of the producer . . . and which is in fair and open competition with commodities of the same general class produced by others . . .".

Section 2 of the act provides that "Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

In determining the legislative intent expressed in this section, we have been impressed with the sweeping and unambiguous language employed. The legislature has not attempted to describe in detail those who may take ad-

vantage of the remedies provided in the act. Instead, it has enacted that any violation of a resale price restriction is "actionable at the suit of any person damaged thereby." Certainly, if it had been intended that such actions should be limited to producers, manufacturers, and wholesalers, it would have been a simple matter for the legislative body to have so provided in express words. The apparent clarity and the broad scope of the language used in the Pennsylvania act have been recognized in other jurisdictions under similar statutes: Port Chester Wine & Liquor Shop, Inc., et al. v. Miller Bros. Fruiterers, Inc., 253 App. Div. 188, 191, 1 N. Y. Supp. (2d) 802, 805 (1938) ; Broff v. Silver Liquor Stores, Inc., et al., 5 Conn. Supp. 288 (1937). The burden is upon defendant to sustain his narrow interpretation of the clear language of the Pennsylvania act.

Defendant contends that section 2 of the act is in derogation of the common law and must be strictly construed. We so held in Bristol-Myers Co. v. Lit Brothers, Inc. (No. 1), 33 D. & C. 52 (1938), affirmed in 336 Pa. 81. That case involved a very doubtful extension of the provisions of the act, and, partially because of this rule of construction, we resolved the doubt in favor of defendant. But when the legislature manifests in clear language an intent to change the common law, as it has done here, we are not at liberty to disregard that intent.

Defendant contends further that the title of the Fair Trade Act, in expressing its purpose, omits any reference to retailers. The title states that the aim of the act is "to protect trade-mark owners, distributors, and the public against injuries and uneconomic practices . . .". Defendant argues that the term "distributor" does not include a retailer. We cannot agree with that construction. In Webster's New International Dictionary (2d ed.) the word "distributor" is defined as "1. One who . . . distributes . . . 2. An agent or agency for marketing, usually in a particular territory, some manufactured goods or other commodities." In this definition no distinc-

tion is made between those who distribute at wholesale and those who distribute at retail. Although a distributor is often one who has an exclusive agency for a product in a specified territory, the term has not always been restricted to wholesale dealers. See the Port Chester Wine & Liquor Shop case, supra. As a matter of fact, it is often used, and properly so, to designate anyone who regularly sells a certain product, either at wholesale or retail. In the Idaho Fair Trade Act, Laws of 1937, c. 240, p. 429, a distributor is defined as "any person authorized by the producers or manufacturer of a commodity to sell the same at wholesale or retail." We conclude, therefore, that the term "distributor", as used in the title, was intended to include a retailer; and that the title sufficiently expresses the purpose of the act in order to come within the requirement of the Pennsylvania Constitution. In Annenberg v. Roberts et al., 333 Pa. 203, 209 (1938), it was held:

" 'A title need name only the real subject of the legislation; it need not set forth all enactments intended to be made in regard thereto. If the subject is designated with sufficient clearness to put one on inquiry into the body of the act, all necessary or appropriate details to carry out the purpose of the statute there found will be treated as within the title' ".

Finally, defendant contends that the primary purpose of the act is to protect the property of the producer, namely, his goodwill, and was not intended to provide a remedy for an injured retailer. However, defendant fails to distinguish between the apparent purpose of the act and the ultimate evil which the legislature is seeking to prevent, namely, price-cutting wars among retailers. Although the cases cited by defendant, Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U. S. 183 (1936), and Bristol-Myers Co. v. Lit Brothers, Inc. (No. 1), supra, support his statement as to the primary purpose of the act, they do not hold that the *sole* aim of

fair trade legislation is the protection of the producer's goodwill.

As an aid to the construction of the Pennsylvania Fair Trade Act, it is significant to note section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551, wherein it is stated:

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied . . .".

There is little doubt that fair trade legislation has been fostered throughout the Nation principally by retailers for the purpose of protecting themselves from price-cutting competition: Weisstein v. Freeman's Wines & Liquors, Inc., 169 Misc. 391, 392, 7 N. Y. Supp. (2d) 234, 235 (1938) ; McLaughlin, Fair Trade Acts (1938) 86 U. of Pa. L. Rev. 803, 817; note, 52 Harv. L. Rev. 284 (1938) ; note, 49 Yale L. J. 145 (1939). It is well recognized that resale price contracts, affording protection to the goodwill of the producer, were intended only as the means of effectuating the ultimate purpose of the act, namely, the prevention of destructive price-cutting among retailers. It is highly improbable that the associations of retailers who promoted the act would have drafted such legislation without providing the necessary remedy for its enforcement. Otherwise, independent retailers would not be able to cope with the competition of price-cutting rivals without themselves violating the statute. See Port Chester Wine & Liquor Shop, Inc., et al. v. Miller Brothers Fruiterers, Inc., supra. The reluctance of producers to sue their customers would, therefore, leave the legitimate retailer remediless.

Defendant further claims that, since the primary purpose of the statute it to protect the goodwill of the

producer, only he has a sufficient property interest to maintain an action for violations of resale price restrictions. But the act does not require the existence of a property interest as a condition precedent to an action thereunder. Furthermore, since the producer establishes the price restriction, not only for his own advantage, but also for the benefit of the retailer, upon whom, as well as the producer, the consuming public relies, it may be said that the retailer has a limited property interest in the goodwill of the producer, which the latter, no doubt, intends to convey to him with the product. A retailer seriously injures his competitor's interest in maintaining the goodwill of the commodity when he sells it at a reduced price. Recognition of this limited property interest was accorded a retailer in the Port Chester Wine & Liquor Shop case, supra.

Therefore, we have concluded that, from the plain language of the act and the surrounding circumstances, the legislature intended to confer a right of action upon any retailer who has suffered damage as a result of violations of the act. In this conclusion, we have the support of the Court of Appeals of New York, which reached the same result in Port Chester Wine & Liquor Shop, Inc., et al. v. Miller Bros. Fruiterers, Inc., 281 N. Y. 101 (1939).

Furthermore, in Shryock v. Association of United Fraternal Buyers, Inc., 135 Pa. Superior Ct. 428 (1939), a retail radio dealer sued a competing association to restrain violations of the Fair Trade Act. The bill was dismissed because it was admitted that defendant had not *knowingly* violated the provisions of the act. However, neither counsel for defendant nor the court of its own motion questioned the right of plaintiff to sue under the act.

In the present case, defendant has filed eight preliminary objections to the bill. We have considered nos. 2 and 3 in our discussion above. Nos. 1, 5, and 7 have apparently been abandoned for lack of merit. We shall dis-

cuss briefly nos. 4, 6, and 8, but we have come to the conclusion that they are not well taken.

Defendant complains that the averments of the bill, with respect to the notice alleged to have been given to defendant of the resale price contracts, are not sufficiently specific to enable him to answer. However, the Fair Trade Act does not specifically require any notice to competing retailers of resale price contracts. It merely provides that "wilfully and knowingly" selling below resale prices fixed according to the act shall be considered a violation thereof. Furthermore, Common Pleas Rule 50 states:

"Whenever it is material to allege . . . intent, knowledge or other condition of the mind of any person, it shall be sufficient to allege the same as a fact without setting out the circumstances from which the same is to be inferred."

Plaintiffs have not only complied with this rule but have gone further and alleged some of the circumstances surrounding the acquisition of such knowledge. Consequently, defendant has no cause to complain.

Defendant claims further that the bill is defective for failure to attach copies of the trade-mark registrations referred to therein. Supreme Court Equity Rule 34 requires all written instruments relied upon for recovery to be included in the bill as exhibits. However, plaintiffs have also averred in the bill that the products, allegedly sold by defendant below the price restrictions, bore the brand and name of the producer. These allegations were sufficient to bring plaintiffs' cause of action within the purview of the act. Therefore, the averments with regard to trade-mark registration are not relied upon for recovery and the exhibits need not be attached.

Defendant also complains that the prayer of the bill is beyond the scope of the act because it seeks to enjoin defendant from selling *any other* commodity below the resale price restrictions. But this is not a proper ground for dismissing the bill. The chancellor may mould his decree in accordance with the cause of action proved at

the hearing, even though plaintiff may have asked for greater relief than he is entitled to under the act.

In the light of the above discussion, the preliminary objections are hereby dismissed.