Isidor Wasservogel,
Official Referee. This is an action brought by plaintiff pursuant to the Feld-Orawford Law *1018 (L. 1935, ch. 976), wherein he seeks an injunction permanently restraining and enjoining defendant from continuing the alleged breach of the terms of certain “ fair trade contracts ” and schedules of prices annexed to them.
Plaintiff and defendant are engaged in the business of selling at retail cameras and photographic products. In terms of distance, defendant is plaintiff’s closest competitor; their stores are located approximately two blocks apart, at No. 68 Cortlandt Street and at No. 92 Liberty Street, borough of Manhattan, city of New York, respectively.
The action is based upon six “ fair trade ” contracts entered into by six manufacturers of cameras and allied photographic equipment. Such contracts.fix the minimum retail price at which dealers are authorized by these manufacturers to advertise, offer for sale or sell any of the items listed therein to the public. It is defendant’s “ price-cutting ” of the stipulated retail prices that plaintiff seeks to enjoin.
Evidence of defendant’s alleged violations was obtained by shoppers employed by the Fair Trade Committee of the New York Guild of Photographic Dealers, Inc., of which plaintiff is an active member and former officer. Defendant does not deny violating the above fair trade agreements. He admits, rather, that underselling plaintiff and his other competitors on the fair trade products is an essential part of his business. Defendant contends, however, that plaintiff and other members of the Fair Trade Committee have combined, not for the purpose of enforcing fair trade contracts in order to protect themselves within the framework of the Feld-Crawford Law, but as part of a conspiracy to restrain and interfere with competition in the marketing and sale of cameras and photographic supplies in the city of New York by persons who, like defendant, are not members of said organization.
Defendant further contends that plaintiff, as well as other members of the Fair Trade Committee, advertised, authorized, offered and approved the sale of merchandise at less than the minimum retail price fixed by the manufacturers thereof, by reason of which, it is asserted, the benefits of the statute have been waived and abandoned, and that plaintiff comes into this court of equity with unclean hands, and is, therefore, not entitled to the relief which he seeks.
The Fair Trade Statute, as the Feld-Crawford Law is commonly known, is incorporated in article XXIV-A of the General Business Law, and the relief is particularly sought herein under *1019 section 369-b thereof, which provides that: ‘ ‘ Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.”
Defendant has shown that all attempts to maintain retail resale prices in the city of New York in the camera and allied photographic fields have broken down and failed and that the industry, as a whole, is in a confused and chaotic state so far as pricing and price maintenance are concerned. Defendant has testified, and the evidence warrants the conclusion, that the various products in this industry are sold throughout the city at open competitive prices without regard to any fair trade contracts and prices fixed therein. In view of these circumstances, defendant contends that should injunctive or other equitable relief be granted to plaintiff, it would cause irreparable damage to him without enforcing or carrying out the spirit or letter of the provisions of the Fair Trade Act.
The desirability of uniformity in business practice and the principle of price maintenance as a method of protecting a legitimate interest, have long been recognized by both the Legislature and the courts of this State. The Fair Trade Act, adopted in 1935, was designed to meet these needs and to prevent destructive price wars among retailers, such conduct being considered unfair competitive practice and against the best interests of our economic system (Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U. S. 183; Bourjois Sales Corp. v. Dorfman, 273 N. Y. 167; Port Chester Wine and Liquor Shop v. Miller Bros. Fruiterers, 253 App. Div. 188; Stockman v. Wilson Distilling Co., 175 Misc. 314, affd. 261 App. Div. 969; Weisstein v. Freeman’s Wines & Liquors, 169 Misc. 391).
The statute, in its original enactment, purported to protect trade-mark owners, distributors, retailers, and the general public against injurious and uneconomic practices in the distribution of articles of a standard quality under a distinguished trade-mark, brand, or name (L. 1935, ch. 976). Section 2 of the Fair Trade Act, upon which plaintiff relies, created a new cause of action, in that it evinced a legislative purpose to have that action inure to the benefit of others than the producer of the product (Port Chester Wine and Liquor Shop v. Miller Bros. Fruiterers, supra). The wisdom of permitting price-fixing *1020 arrangements and interdicting price-cutting competition was a matter for the Legislature to determine. Once that body of lawmakers has enunciated the public policy of this State, the fact that the statute creates inequities is not a ground for a court’s refusal to enforce it (National Distillers Products Corp. v. Columbus Circle Liquor Stores, 166 Misc. 719; Port Chester Wine and Liquor Shop v. Miller Bros. Fruiterers, supra).
Defendant’s contention in the respect above referred to, therefore, cannot be sustained. The consequences of price-cutting by a retailer fall most heavily upon the competing retailer who, ostensibly, is observing his contract obligations. He is deprived of his sales, and his good will in the neighborhood may be irreparably harmed as a result of the activities of his competitors. It is inconceivable that an individual retailer is to be regarded as responsible for conditions of the industry throughout the city, or under an obligation to attempt to bring about compliance. with the law by all of his competitors. No such burdens rest upon plaintiff as a condition to equitable relief herein.
I hold that the diligence or lack of diligence with which plaintiff may have policed the trade, in his former official capacity as a member of the trade association, is in no wise germane to his individual rights as a retail storekeeper to maintain the instant action. Defendant’s affirmative defense that he is a victim of a conspiracy of his competitors, organized as a trade association, was considered by Mr. Justice Stetteb at Special Term, Part ITT, of this court in granting plaintiff’s motion for a temporary injunction (194 Misc. 643). Likewise in a ruling by Mr. Justice Hofstadteb, rendered at Special Term, Part I, of this court (N. Y. L. J., Feb. 24, 1949, p. 688, col. 7) upon defendant’s motion to examine plaintiff and his employees before trial, item No. 3 of the examination, relating to the combination and conspiracy of plaintiff and members of the Guild, was denied to defendant. I hold that the mere financing of a lawsuit and hiring of counsel by an association does not create a conspiracy which invalidates any proceeding brought by one of its members in a court of equity to further the objectives of such organization in which the individual bringing the suit has a vital interest.
The principle expressed by the “ clean hands ” maxim of equity, which is also urged by the defense, is one of the elementary and fundamental conceptions of equity jurisprudence and furnishes one of the most important rules affecting the entire field of equitable relief (Farlou Realty Corp. v. Woodsam Asso *1021 ciates, 294 N. Y. 846; Wolfenstein v. Fashon Originators Guild of America, 244 App. Div. 656; Pomeroy’s Equity Jurisprudence, § 397 et seg.; 30 C. J. S., Equity, § 93).
In the instant action the record discloses that plaintiff is, himself, guilty of violations of the price maintenance agreements which he seeks to enforce herein. At the time of the argument of the motion for a temporary injunction, defendant presented, by way of affidavit, but one instance of a violation by plaintiff of the fair trade contracts here involved. As stated by Mr. Justice Steueb (supra, p. 644), “ a practice by plaintiff’s employees of the same tactics would put a different complexion on the interpretation.”
Upon the trial of this action, evidence was given by one Biller, a former salesman and floor manager employed by plaintiff. His testimony negatives the contention advanced by plaintiff that the isolated instance of a violation referred to on the motion for a preliminary injunction was merely a breach of duty by one of the salesmen in his employ. The record demonstrates affirmatively that other sales of a similar nature were made by plaintiff and Ms staff below fixed prices. The witness Biller testified that plaintiff instructed his salesmen to try to adhere to the FeldCrawford Act “ if they possibly could on any sales, but not to lose a sale.” Biller admitted making at least two dozen sales himself below the stipulated prices during 1948. The witness further testified as follows:
Q. What were your instructions from Mr. Fogel as to sales below the FeldCrawford prices? A. To be careful as to whom we were selling and to make sure we knew the account or the customer * * *.
Q. And did he tell you, you could sell it below list price if you knew the customer? A. Yes. 8 * *.
Q. You were asked here with regard to sales below the list price. Did you ever tell your employer that you had made such sales? A. Yes.
Q. Did you at any time during your employment in Mr. Fogel’s store, sell camera items at below Fair Trade prices? A. Yes.
Q. And did you at any time during your employ see any other employee of Mr. Fogel’s store sell camera items at below Fair Trade prices? A. Yes.
Q. Who made such sales? A. Mr. Goldberg.
Q. Who else? A. Mr. Shapiro * * *.
Q. Did you ever observe Mr. Fogel make such sales at below Fair Trade prices on camera items 8 * ® ? A. Yes. 8 * *.
Q. Can you recall the names of any customers that Mr. Goldberg sold to? A. Yes. 8 * *. Mr. Wolf — Bertram Wolf * * 8 Mr. Zalin — Maurice Zalin 8 8 ® Mr. Spingola 8 8 8 Louis Alverez.
Q. What did he buy? A. He bought a Bell and Howell projector — he bought Bell and Howell projectors and Eastman-Kodak 35-millimeter cameras.
Q. And did he get a discount below the list price? A. Yes.— twenty per cent on me Eastman-Kodak and fifteen per cent on Bell and Howell.
Q. Do you know any other specific sales? A. Yes — Mr. Arthur Field.
Q. What did he buy? A. An Eastman-Kodak movie camera.
Q. What was the list price? A. Approximately $187.
*1022 Q. And what price did he buy it for — what price did he pay for it ? A. Fifteen per cent below the,list price * * *.
Q. Were you ever told by Mr. Fogel that when a sale was below list price, you were not to make out a sales slip to a customer — you are not to give a sales slip to a customer? A. Tes.
Q. And can you tell us how many times that question was discussed? A. Two dozen times.
Plaintiff met this testimony by categorical denials by himself and by two of his salesmen, although one admitted violating a price-fixing agreement for which he was admonished by plaintiff. No reason has been shown why the credibility of the witness Biller should be questioned. As a salesman and manager of plaintiff’s store, he had certain authority which he exercised in the consummation of sales of camera and photographic equipment. He testified, and plaintiff has not shown why his testimony should be doubted, that he reported most of his sales to plaintiff personally if they were below list price and if he thought they warranted plaintiff’s attention. It might be inferred from this that only very unusual circumstances would warrant calling plaintiff’s attention to particular sales, and that one below the fixed price evidently did not require any special comment. Biller was not an interested party to this action, nor has he any present connection with either plaintiff or defendant, having left plaintiff’s employ under normal circumstances to assume a better position for higher wages. His testimony was straightforward, despite a seeming reluctance to testify. Although he supplied a number of names of customers to whom cut-price sales were made, none of them was called by plaintiff in rebuttal.
While a court of equity endeavors to maintain, promote, and enforce the interests of justice, it nevertheless stringently demands good faith, fairness, and uprightness from the litigant parties who come before it either as plaintiffs or defendants. Equity will not open its doors to one who seeks to enforce alleged rights arising from a contract which he himself has breached or violated (30 C. J. S., Equity, § 99, p. 497; Thompson Co. v. American Law Book Co., 122 F. 922; Fay v. Lambourne, 124 App. Div. 245).
The fact that plaintiff has a relatively small business in comparison to defendant’s, and could in no way affect the latter if they both continued to engage in price-cutting activities, is not here material. The requisite in determining whether a party comes into court with clean hands is not alone the actual or probable injury to him, but also his moral intent and good faith.
*1023 Upon equitable principles, therefore, and upon the evidence before me, I hold that plaintiff is not entitled to the relief he seeks in this action. Judgment is rendered for defendant dismissing the complaint on the merits. No costs are awarded.
Submit decree within ten days on three days ’ notice.
The foregoing are the facts found by me and constitutes the decision of the court as required by section 440 of the Civil Practice Act.