RAY KLINE, INC., and Another, Plaintiffs, *v.* DAVEGA-CITY RADIO, INC., and Another, Defendants.

Supreme Court, Westchester County, April 16, 1938.

*Samuel Rochlin*, for the plaintiffs.

*Scandrett, Tuttle & Chalaire*, for Davega-City Radio, Inc.

*Irving Goldenberg*, for the Vim Radio & Sporting Goods Store, Inc.

PATTERSON, J. This is an action brought by two retail dealers in radios of the city of White Plains for a permanent injunction restraining and enjoining the defendants from selling certain named radio products below the minimum prices set by the manufacturers and distributors under so-called fair trade agreements entered into between various manufacturers or distributors on the one hand and various retailers on the other.

The instant motion is one for a temporary injunction restraining, during the pendency of this action, the defendants from advertising and offering for sale radios at prices less than the minimum prices established by the manufacturers or distributors of the make of radios in question. The defendants were not signatories to the contracts between the manufacturers and the retailers. However, that is not necessary in order for the plaintiffs to maintain this action. It was clearly established in the recent case of *Port Chester Wine & Liquor Shop, Inc.*, v. *Miller Bros. Fruiterers* (253 App. Div. 188), decided January 28, 1938, by the Appellate Division of the Second Department, that the retailer of goods operating under a price-fixing contract, made pursuant to the Fair Trade Act, is entitled to enforce a contract against a competitor retailer and to enjoin the latter from selling goods covered by the contract at prices below those fixed therein; that a retailer comes within the provisions of the act providing that price cutting is unfair competition and is actionable at the suit of any person damaged thereby.

It seems to be now well established where the plaintiffs possess a property right such as would enable them to maintain an action for claimed damages arising from defendants' price cutting, that such a property right is not possessed solely by the producer or wholesale vendor of the articles in the first instance. In other words, the act does not purport to limit protection to the ownership of the trade-mark, brand or name, but it includes distributors. The act is all-comprehensive in this respect, as it especially provides that price cutting is unfair competition and is actionable at the suit of any person damaged thereby.

There can be no doubt from the papers submitted that the defendants have sold the makes or types of radios in question at prices greatly below those fixed in the price maintenance contracts between the manufacturers and their retailers. Indeed, the defendants' attempt to deny this is hardly more than *pro forma* and half-hearted.

It being established that the plaintiffs are entitled to maintain this action in the event that the defendants had been guilty of cutting prices below those fixed by the manufacturers for the sale of the radios in question, and it appears unquestionably that they

have done that, the query then follows, Why are the plaintiffs not entitled to the equitable relief they seek, *pendente lite?*

It clearly appears, without much serious contradiction on the part of the plaintiffs, that the efforts to enforce the Feld-Crawford Act (Laws of 1935, chap. 976; McKinney's Unconsol. Laws, §§ 2201-2205), as applied to the sale of radios, has failed utterly, and the industry is in a wholly chaotic and demoralized condition. Observance of the contracts seems to be the rare exception. There are many causes for this. First, the manufacturers or distributors themselves are largely to blame, notwithstanding that the primary aim of the law was to protect the good will of the producers; the general economic conditions; the depressed market for radios and the advent of new models, rendering the old, out-moded and unmarketable at anywhere near the prices as fixed, have all contributed to this condition. The very contracts upon which the plaintiffs predicate this action permit discounts from list prices under the guise of so-called trade-in allowances. This opens the door wide to the greatest abuses and has resulted in a condition where the law is of little, if any, value for the protection of the retailer and has negatived the whole purpose and spirit of the act. Then, too, the manufacturer has contributed to the present condition by greatly reducing the cost price to the retailer without in turn reducing the price for which the retailer can sell. Manufacturers have made reductions up to thirty per cent in the wholesale price of radios to dealers, but did not take the trouble to reduce the fictitious retail prices prescribed by their contracts. These reductions in the wholesale prices were passed on to the consumer in the form of increased allowances to a retail purchaser. However, it may be argued, because violations of the contracts are general and widespread, and the business is greatly demoralized by reason of price cutting, that is no answer to the plaintiffs' position here, if they have observed the contracts on their part. In other words, two wrongs never make a right. But the defendants counter that the plaintiffs themselves have been guilty of price cutting and there seems to be ample before me to justify that conclusion. If defendants' acts constitute unfair competition, then it would seem that plaintiffs are equally guilty of unfair competition and should be denied equitable relief.

A court of equity will not grant the drastic relief of a temporary injunction to one who has himself violated the contract or covenant sought to be enforced. I can see nothing in the act itself which makes the Feld-Crawford Act an exception to this general equitable rule. (See *Gillette Safety Razor Co.* v. *Green,* 167 Misc. 251.)

Because of the highly competitive conditions of the radio industry at the present time, a temporary injunction can be of but little aid to the plaintiffs, and may work irreparable damage to the defendants. It would seem that the collapse of the retail radio price structure and the general disregard of all list prices since the promulgation of the contracts in question have made selling at competitive levels an economic necessity. Were the injunction granted it could afford no appreciable relief to the plaintiffs, as it would mean merely the elimination of a couple of competitors in a field in which it is represented there are 5,000 radio retailers who are competing with the plaintiffs and defendants.

Conditions may so change that to enjoin the violation of a restrictive agreement would result in no substantial benefit to the plaintiffs and great harm to the defendants. In such instances, courts of equity have consistently refused to enjoin. (See *McClure* v. *Leaycraft*, 183 N. Y. 36.)

It is my conclusion that a temporary injunction should be denied because the plaintiffs do not come into court and seek equitable relief with clean hands, the absence of proof of willfulness on the part of the defendants in selling under competitive levels, and the absence of benefit to the plaintiffs by granting of the injunction sought and the resultant harm to the defendants were it granted.

The motion for a temporary injunction is denied.