LUCIEN LELONG, INC., Plaintiff, *v.* H. MOHR & COMPANY, INC., Defendant.

Supreme Court, Special Term, New York County, November 22, 1938.

*Breed, Abbott & Morgan* [*Thornton Land* of counsel], for the plaintiff.

*Leo Guzik*, for the defendant.

LAUER, J. This is an action for an injunction restraining the defendant from selling in this State perfume produced and sold by the plaintiff at prices less than those stipulated in so-called fair trade contracts between the plaintiff and retail distributors. The plaintiff asserts its right to the relief sought, under the Fair Trade Act (Laws of 1935, chap. 976 [McKinney's Unconsolidated Laws], §§ 2201–2205]). The usual allegations that the defendant had knowledge of the contracts and prices therein contained, and that in violation of them, the defendant has sold and offered for sale plaintiff's merchandise at prices " less than the minimum resale price stipulated under the * * * contracts entered into by the plaintiff with other dealers, * * *, are contained in the complaint."

There is little, if any, dispute on the material facts. The plaintiff is a producer and wholesaler. The defendant is also a wholesaler. Neither sells at retail to the consuming public. The prices at which the defendant sells the plaintiff's interdicted product are *higher*, not lower, than those of the plaintiff itself. They are lower, it is true, than the prices at which plaintiff's customers resell it to the consumer. Or to state it differently — the defendant as a wholesaler sells only to retailers at wholesale prices higher than those at which the plaintiff sells the same product to retailers, but lower than the retail prices. It is not claimed that defendant's customers resell the product at less than the retail prices fixed by the plaintiff in its contracts with its own customers. In fact the plaintiff does not sell to wholesalers at all, and there are no wholesale prices fixed. The defendant does not buy from the plaintiff, and apparently gets the merchandise from retailers to whom the plaintiff sells under the price-fixed contracts, and patently at prices lower than the fixed retail prices. The defendant's customers are, therefore, retailers to whom the plaintiff does not sell, for they pay the defendant prices which are higher than their competitors pay the plaintiff.

The defendant sets up a number of defenses, the first of which embodies the facts recited in the last paragraph; the second, that chapter 976 of the Laws of 1935, as amended, has no application because all of plaintiff's products which are sold in New York are sold, shipped, etc., in interstate commerce; the third, that plaintiff

discriminates against certain retailers, refusing to sell its products to them and refuses as well to sell to those who are desirous of reselling to retailers, and that, therefore, it has forfeited equitable relief; fourth, patterned after second, that as the transactions are in interstate commerce the State statute is unavailing for injunctive relief, and fifth, that the Feld-Crawford Act, if applied to the defendant's sales at wholesale, in view of the absence of wholesale fixed prices, is unconstitutional.

The constitutionality of the statute involved is no longer in dispute (*Bourjois Sales Corp.* v. *Dorfman*, 273 N. Y. 167; *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.*, 299 U. S. 183) in so far as it has been applied to the varying situations heretofore presented for judicial determination. It is true that a statute may be constitutional as applied to one set of circumstances and unconstitutional when it is made to cover a situation not embraced within its contemplation. (*Nashville & St. L. R. Co.* v. *Walters*, 294 U. S. 405; *Mintz* v. *Baldwin*, 2 F. Supp. 700; affd., 289 U. S. 346.)

While the act is entitled " *Retail* Price Fixing " (italics are the court's) it has by implication been held to cover wholesale price fixing. (*Gillette Safety Razor Co.* v. *Green*, 167 Misc. 251; *Calvert Distillers Corp.* v. *Nussbaum Liquor Store, Inc.*, 166 id. 342.) In the Encyclopaedia of Social Science (Vol. XIII, p. 326), under the title " Resale Price Maintenance," wholesalers and retailers are joined without discrimination. But in those cases there were fixed wholesale prices. Here there were none, and plaintiff's Exhibit 2 (the list of its fixed prices which forms part of its contracts with its " dealers ") uses the expression " Retail Price " over thirty times without once using the expression " Resale Price." Under these conditions it becomes unnecessary to pass on the questions of the constitutionality of the law as applied to the instant case, where there have been no wholesale prices fixed and where the contract refers only to retail prices.

On the facts adduced at the trial either by testimony or stipulation I find that the sales involved were in intrastate not interstate commerce; that no wholesale prices were fixed; that the contracts upon which plaintiff relies fixed only retail prices; that under such contracts the " Dealers," *i. e.*, purchasers from the plaintiff, were authorized to sell *for resale* (Contract, ¶ 6) and I interpret that provision to mean that the price at which the dealer sells for resale is not affected by the fixed retail price, but may be less, affording the dealer's purchaser the opportunity for profit when he resells to a retailer who then, if he has knowledge of the fixed price agreement, is bound not to sell to the consumer at prices lower than those fixed.

The purchases for resale, made by the defendant from plaintiff's dealers at prices less than the fixed retail prices, were, therefore, not in violation of the contracts nor in contravention of the law invoked.

I find that the defendant did not resell to consumers, and the prices at which it resold to retailers, as previously stated, were higher than the prices at which the plaintiff sold to retailers, *i. e.*, the defendant's wholesale prices exceeded the plaintiff's. I find that the sales which the defendant as wholesaler made to retailers at such prices were not in violation of the fixed price contracts nor prohibited by the act.

I also find that there is no evidence that the defendant's customers resold to the consumer at prices less than those fixed in the contracts between the plaintiff and its dealers.

It may be that the plaintiff, under the act, and possibly even at common law, has the right to limit, within certain bounds already judicially determined, the persons who shall resell its products to the public, and the right to discriminate among dealers as to who shall and who shall not act in the capacity of distributors. ( *United States* v. *Colgate & Co.*, 250 U. S. 300; *Revlon Nail Enamel Corp.* v. *Charmley Drug Shop*, 123 N. J. Eq. 301; 197 A. 661; *Federal Trade Comm.* v. *Raymond Co.*, 263 U. S. 565.) But if so it should secure that result by its contracts and if, as in the case at bar, it expressly permits its selected dealers to resell *for resale*, it cannot complain if its products are sold to the public by retail distributors not of its own choice. Neither can it, under the circumstances, complain that its prestige, good will or fair name may be damaged because its products reach the consumer through unauthorized channels. No other damage has been claimed or proved.

Under all the circumstances I find that the defendant has not been shown to be guilty of violating any rights of the plaintiff granted by the Fair Trade Act, or covered by its contracts with its dealers. Judgment for the defendant, with costs.