AUTOMOTIVE ELECTRIC SERVICE CORP., Plaintiff, *v.* TIMES SQUARE STORES CORPORATION, Defendant.

Supreme Court, Special Term, New York County, December 12, 1940.

*Charles E. Murphy* [*H. S. Manges* of counsel], for the plaintiff.

*Bondy & Schloss* [*Norman P. S. Schloss* of counsel], for the defendant.

WALTER, J. Plaintiff sells, to both wholesalers and retailers, certain products manufactured by AC Spark Plug Company of Flint, Mich., and sold to plaintiff under what is called a " franchise," which is a contract between it and that company by which it is authorized to deal in, distribute and sell such products throughout the State of New York. It has been so doing since 1938. It does not itself manufacture such products and is not the owner of the identifying marks or brands, and it is only one of more than a dozen concerns to which the manufacturer has given similar franchises in New York State. The contract between plaintiff and the manufacturer contains no provision with respect to resale prices.

After obtaining its so-called " franchise," plaintiff, in each of the years 1938, 1939 and 1940, entered into a number of contracts with a number of its customers by which such customers agreed not to resell products bought by them from plaintiff at less than a price stated in such contracts. The manufacturer is not a party to any of such contracts.

Defendant is a retailer of automobile supplies, including the products of AC Spark Plug Company, above mentioned, and operates about twenty-nine stores in New York State. It is not a holder of a " franchise " from the manufacturer, and during the times here in question it was not and is not a party to any contract with plaintiff nor, so far as appears, with any other holder of such a " franchise."

Plaintiff here seeks to enjoin defendant from selling such products at retail at prices less than those fixed in the contracts which plaintiff has entered into with certain of its customers as above stated. (Laws of 1935, chap. 976, commonly called the Fair Trade Law, now embodied in General Business Law as sections 369-a to 369-e.)

The articles in question bear the trade-mark or brand or name of the manufacturer, and they are in open competition with commodities of the same general class produced by others. Defendant admits that it advertises and offers for sale and sells the articles at less than the price stipulated in the contracts which plaintiff has entered into with certain of its customers, and admits that

it has continued to do so with notice of such contracts. It also contends that its sales do not fall within the exceptions stated in subdivision 2 of section 1 of the statute above mentioned. (Gen. Business Law, § 369-a, subd. 2.)

There is no evidence, however, that the manufacturer itself ever has entered into any contract containing any provision that the buyer, immediate or remote, of any of the products manufactured by it will not resell the same except at a price stipulated by it, that is to say, it does not appear that the manufacturer ever entered into any contract containing any provision such as is specified in subdivision 1 of the statute above mentioned. The most that the evidence shows in that regard is that the manufacturer prepared the contracts which plaintiff entered into with certain of its customers, and furnished the printed form thereof to plaintiff, and told the plaintiff, before entering into its franchise contract with the plaintiff, that the plaintiff should use the contracts so prepared and furnished in distributing its products and that the same should be adhered to, and that the manufacturer furnished similar contract forms to the other concerns with which it entered into the so-called " franchise " contracts and made a similar oral statement to such other concerns.

The evidence further conclusively establishes, however, that from at least as far back as 1936 and continuing down to the present time, the products in question have been and are being sold by large numbers of different concerns in many different localities in New York State at prices substantially lower than the prices specified in the contracts which plaintiff has entered into with certain of its customers. In fact, numerous dealers in such articles have testified that they never have known the articles to be retailed at the prices so specified except in a few instances where the sale is accompanied by an installation involving labor or service.

The prices specified in the contracts which plaintiff has entered into with certain of its customers, thus are not in fact the prices at which the articles in question are being sold or at which they have been sold. Sales at substantially less than the prices so specified have been widespread and general and repeated, and such sales have not been and are not at a single uniform price, and both the plaintiff and the manufacturer long have known of that condition and have done nothing to stop it, except that plaintiff brought this action in October, 1939, and noticed it for trial for the June term, 1940, without having moved for an injunction *pendente lite.*

One of the many concerns which has been consistently retailing at less than the prices fixed in the contracts which plaintiff has entered into with certain of its customers is a concern which holds one of the manufacturers so-called " franchise " contracts and operates over fifty retail stores in New York State.

Under the facts thus shown it does not seem to me that there ever was any such fixation of retail prices as would justify an injunction. The only conduct made actionable by the statute is selling at less than the price stipulated in a contract made pursuant to the statute, and it does not seem to me that any contract can be said to be made pursuant to the statute unless it be one which contains provisions fixing resale prices and is made by the person, firm or corporation whose trade-mark, brand or name is borne upon the commodity or the label or contents thereof.

Such limitation seems to me to be implicit in the language of the statute, because the only contracts there mentioned are those which contain resale provisions and which relate to the sale or resale of a commodity which bears, or the label or content of which bears, the trade-mark, brand or name of (a) the producer of the commodity, or (b) the owner of the commodity. The producer of a commodity which bears the trade-mark or brand or name of that producer is thus authorized to fix resale prices. In like manner the owner of a commodity which bears the trade-mark or brand or name of that owner is thus authorized to fix resale prices. But I do not see how the language can be extended to include, among those entitled to fix prices, any one whose trade-mark or brand or name is not so borne upon the commodity or the label or content thereof.

That the statute limits the right to fix prices to the one whose trade-mark or brand or name is thus used in connection with the commodity is indicated also, I think, by the decided cases in which the statute has been discussed and applied.

The validity of the statute was sustained in *Bourjois Sales Corp.* v. *Dorfman* (273 N. Y. 167) upon the authority of *Old Dearborn Co.* v. *Seagram Corp.* (299 U. S. 183) and *Mc Neil* v. *Joseph Triner Corp.* (Id.), which involved a similar statute of Illinois and affirmed *Joseph Triner Corp.* v. *Mc Neil* (363 Ill. 559; 2 N. E. [2d] 929), and *Seagram-Distillers Corp.* v. *Old Dearborn Distributing Co.* (363 Ill. 610; 2 N. E. [2d] 940). In rejecting the view that the statute permitted an unauthorized restriction upon the disposition of one's own property, which was the view our Court of Appeals had taken in *Doubleday, Doran & Co.* v. *Macy & Co.* (269 N. Y. 272), the Supreme Court of the United States stated that the primary aim

of the law is to protect the good will of the producer (p. 193), and that court also specifically pointed out that the defendant in that case had acquired the commodity in question with full knowledge of an existing restriction in price " *which the producer and wholesale dealer had imposed* " (p. 193). That court further stated that the statute " interferes only when he [the defendant] sells with the aid of the good will of the vendor " and " proceeds upon the theory that the sale of identified goods at less than the *price fixed by the owner of the mark or brand* is an assault upon the good will " (p. 195). Reference to the opinions of the Illinois Supreme Court in those cases also reveals that in the *Seagram* case the defendant was proceeding in violation of a contract which it itself had signed (363 Ill. 612), and that in the *McNeil* case, which related to Schenley whiskies, there was a " uniform and standard Schenley retail price " which was consistently maintained by approximately eighty-five per cent of the retailers of such whiskies in Chicago (363 Ill. 562, 563) and that defendant was underselling with full knowledge of agreements entered into by all Schenley distributors in Chicago with substantially all retailers of liquor in Chicago. (Id. 564.) I think the plain implication is that those who were there called " Schenley distributors " were the owners of the identifying marks or brands. The Illinois Supreme Court there also stated that the gist of the theory of the statute is that " the manufacturer of a trade-mark article sold in competition with articles of similar nature, *who has designated a fair price* at which he, as well as his distributor and retailer, can make a fair profit, has a property right in the good will towards his product which he has created, and that it is sound public policy to protect that property right against destruction by others who have no interest in it except to employ it in a misleading manner for the purpose of deceiving the public." (Id. 568.)

In *Max Factor & Co.* v. *Kunsman* (5 Cal. [2d] 446; 55 P. [2d] 177), in which the constitutionality of the similar statute of California was sustained, it was expressly stated (at pp. 463, 464) that section 1½ of the California statute, which corresponds to section 2 of the New York statute (now Gen. Business Law, § 369-b), " comes into operation *only* when the manufacturer or producer has entered into contracts fixing the resale price."

I recognize, of course, that when a price-fixing contract has been entered into by the person, firm or corporation whose trade-mark or brand or name is borne upon the commodity, persons other than such person, firm or corporation may enjoin sales at prices less than those so fixed. Such is the plain import of that

part of the statute which says that such underselling is actionable at the suit of any person damaged thereby, and such is the express holding in *Port Chester Wine & Liquor Shop* v. *Miller Bros.* (281 N. Y. 101, affg. 254 App. Div. 780), which in turn rests upon 253 Appellate Division, 188. A Special Term holding that an injunction can be granted only at the suit of a producer or vendor was there reversed (253 App. Div. 189), but the fact nevertheless remains that in that case the prices, the cutting of which was sought to be enjoined, were " prices fixed by the producer " (253 App. Div. 190), or, as expressed by the Court of Appeals, " prices stipulated by the distillers " (281 N. Y. 105). Throughout the opinion of the Appellate Division emphasis was laid upon the fact that the prices had been fixed in a contract between the producer and the plaintiff (253 App. Div. 191, 192, 193), and the Court of Appeals likewise limited its holding to " a retail reseller who is bound to abide by the resale price restrictions of a fair trade agreement " (281 N. Y. 106).

But although persons other than the owner of the trade-mark or brand or name by which the commodities are identified thus may sue where they are damaged, and although in that sense the statute protects others than the producers of products so identified, it still is an essential part of the cause of action that the damage be occasioned by selling below prices fixed by the owner of the identifying mark or brand. All the cases, I think, proceed upon that view. I find none in which an injunction has been granted in which the price had been fixed by one other than the owner of such mark or brand.

In *Bourjois Sales Corp.* v. *Dorfman* (*supra*) the allegation of the complaint (which, of course, was controlling because the case was determined upon the complaint alone) was that the plaintiff had the sole and exclusive right to use in the State of New York the trade-marks, brands, names and labels to which the action related in connection with the sale and distribution of the commodities to which the action related, and also that the plaintiff was the owner of the business and good will in the State of New York associated with the sale and distribution of said articles. (Record on Appeal, fols. 29, 30.)

In *Fucci* v. *Cloder* (254 App. Div. 487) it again appeared that the injunction sought was against selling at prices less than those " fixed by manufacturer and others."

In *Lentheric, Inc.*, v. *Grant Co.* (257 App. Div. 348) the plaintiff owned and had the exclusive right to use the trade-marks and it had itself contracted that retailers should not sell for less than the prices fixed by it.

In *LePage* v. *Automobile Club* (258 App. Div. 981) it again appeared that the contract into which plaintiff had entered was a contract with the owner of the trade name and incident good will and that plaintiff had agreed to abide by resale prices fixed by such owner. (Record on Appeal, fols. 21, 22.)

In *Lelong, Inc.*, v. *Mohr & Co., Inc.* (169 Misc. 560; affd., 257 App. Div. 820), and in *Gillette Safety Razor Co.* v. *Green* (167 Misc. 251; affd., 258 App. Div. 723) the plaintiff was the producer.

In *Guerlain, Inc.*, v. *Woolworth Co.* (170 Misc. 150) the plaintiff was the owner of the marks and names.

In *Weisstein* v. *Freeman's Wines & Liquors, Inc.* (169 Misc. 391) the price-fixing contracts involved, as appears from an examination of the judgment roll on file in this court, were between the distillers and the plaintiff.

In *Kline, Inc.*, v. *Davega-City Radio, Inc.* (168 Misc. 185), the action was by retail dealers, but what was sought to be enjoined was selling below prices set by the manufacturers under contracts; and while the court stated that the statute does not limit its protection to the owner of the trade-mark or brand or name it also stated that the right of action extends to plaintiffs who " possess a property right," and, as stated above, the plaintiff there did possess such right by contract. In other words, it was the owner who had fixed the price.

Plaintiff lays stress upon *Schenley Products Co.* v. *Franklin Stores Co.* (124 N. J. Eq. 100; 199 A. 402). The actual decision therein was that it was error to dismiss on demurrer a bill of complaint which alleged that one of the plaintiffs had entered into a price-fixing contract with a retailer and that another was a party damaged by the acts complained of. Such decision would appear upon its face to be correct because such allegations there had to be taken as true, and while the opinion lacks clarity upon the precise point here under discussion, nothing appears upon the face of it to indicate that neither plaintiff was the owner of the identifying marks or brands. If, however, that one case be regarded as going to the length of holding that the mere making of a contract by any one, regardless of his legal relation to the owner of the identifying marks or brands, it is no more persuasive than it is controlling.

To hold that the statute authorizes another than the owner of the identifying marks or brands of a commodity to fix resale prices and then enforce such prices upon others than parties to the particular contract, would produce intolerable confusion and very largely defeat the purpose of the statute, for if a person other than

such owner can do it then a hundred others may do it and each may fix different prices. Under such a holding the owner of the trade-mark might find his prices fixed for him by the very cut-raters against whom the statute aims to protect such owner.

Plaintiff argues that the owner of the identifying marks or brands here in effect has fixed retail sales prices because such owner, the manufacturer of the commodities, prepared the contracts which plaintiff and the other holders of the so-called " franchise " contracts have entered into with some of their customers and furnished the forms therefor to them with an oral statement that they should be used and adhered to. Such oral statement is treated by plaintiff's counsel as constituting a conditional delivery of the franchise contracts. I think it plain that it cannot be so regarded. It is merely an attempt to vary the written franchise contracts by adding another term not contained in the writing, and hence is abortive. For some reason not disclosed, the manufacturer, the owner of the identifying marks or brands, here has refrained from making itself a party to any contract by which retail sales prices are fixed or stipulated.

If, however, it be assumed that the contracts here entered into constitute contracts such as come within the terms of the statute (either because the statute authorizes price-fixing contracts by persons other than the owner of the identifying marks or brands or because such owner is to be regarded as in effect a party to the contracts under plaintiff's theory of conditional delivery), there still remains an insuperable objection to the granting of any injunction, viz., the general and widespread disregard of such contracts with the knowledge and acquiescence of the manufacturer, which is here so pronounced as to show an actual abandonment of such contracts.

The fact that there are some violators who have not been proceeded against is not in itself sufficient as matter of law to defeat the right to an injunction against one violator, but it is essential that there be sincere and diligent effort to prevent price-cutting and reasonable diligence to see that there is not a continuance thereof after notice, and resort must be had to legal process if necessary for such prevention. Where the price-cutting is general and long continued, failure to take effective measures to prevent it is to be regarded as a waiver or abandonment of such rights as the contracts and the statute have conferred. Otherwise, unjust and unfair discrimination, instead of fair trade, would be the product of the statute. (*Calbert Distillers Corp.* v. *Nussbaum Liquor Store, Inc.*, 166 Misc. 342, 346, per SHIENTAG, J.; *Schimpf* v. *R. H.*

*Macy & Co.*, Id. 654, per · VALENTE, J.; *Steinberg* v. *Wall Street Liquor Corp.*, N. Y. L. J. May 10, 1939, p. 2150, per HOFSTADTER, J.; *Gordon J. Weil, Inc.*, v. *Gimbel Bros., Inc.*, Id. June 1, 1939, p. 2528, per PATTERSON, J.; *Wilson Distilling Co.* v. *Stockman*, 11 N. Y. Supp. [2d] 51, per NOONAN, J.; *Calvert Distillers Corp.* v. *Stockman*, 26 F. Supp. 73, and see, also, for the equitable principle involved, *Gillette Safety Razor Co.* v. *Green*, 167 Misc. 251; affd., 258 App. Div. 723, and *Kline, Inc.*, v. *Davega-City Radio, Inc.*, 168 Misc. 185.)

Injunction in cases under this statute is designed to maintain a price previously fixed and existing; not to establish a non-existent price.

Plaintiff's suggestion that a decree might be made with a provision that defendant should be entitled to vacate it upon showing that plaintiff is failing to make reasonable efforts to compel defendant's competitors to observe the prices is equivalent, under the facts of this case, to a suggestion that I should vacate the decree with the same penful of ink with which I sign it. I thus should not sign one at all.

It follows that defendant is entitled to judgment dismissing the complaint upon the merits, with costs. Enter judgment accordingly.