**NORMAN M. MORRIS CORPORATION.**

v.

**HESS BROTHERS, Inc., Appellant.**

No. 11966.

United States Court of Appeals
Third Circuit.

Argued Nov. 15, 1956.

Decided March 26, 1957.

Irving W. Coleman, Northampton, Pa., (Coleman & Kutler, Northampton, Pa., on the brief), for appellant.

Thomas A. Rothwell, New York City, (Hirsh W. Stalberg, Shapiro, Rosenfeld, Stalberg & Cook, Philadelphia, Pa., Lewis G. Bernstein, New York City, on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

Defendant has appealed from the issuance of a preliminary injunction restraining it from selling trade-marked "Omega" watch products at prices below those stipulated by plaintiff, such course of conduct being made actionable by the Pennsylvania Fair Trade Act, 73 P.S. § 7 et seq.

The facts are virtually without dispute. Plaintiff, a New York corporation, is the exclusive distributor in the United States of "Omega" watches. It neither produces the watches nor owns the trademark. Defendant, a Pennsylvania corporation, is the owner of a department store in Allentown, Pennsylvania. Plaintiff entered into a number of resale price contracts with various retail dealers

in which it stipulated the minimum prices at which "Omega" watches might be sold. It appears that the price stipulation was initiated by the plaintiff alone, and not by the producer or owner of the mark. Defendant did not sign any contract with plaintiff but was fully aware of the minimum prices. Defendant also knowingly advertised for sale and sold "Omega" watches at prices lower than the resale prices stipulated by plaintiff.

Appellant makes three salient contentions. First, it argues that the Pennsylvania Fair Trade Act authorizes only the producer or owner of the trade-mark to stipulate fair trade prices, and not an exclusive distributor. Next, it argues that if a distributor is authorized to stipulate the resale price, then the Act contravenes both the Constitution of the Commonwealth of Pennsylvania and that of the United States. Third, it contends that the McGuire Act, 15 U.S.C.A. § 45 (a), which exempts nonsigner provisions from the effect of the Sherman Anti-Trust Act, is unconstitutional.

Brief allusion to the historical development of Fair Trade Acts is expedient at the threshhold of this discussion. In 1911, the United States Supreme Court in Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 407–408, 31 S.Ct. 376, 55 L.Ed. 502, struck down an agreement to maintain resale prices as an unlawful restraint of trade violative of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq. It was decided that vertical price fixing between manufacturer and retailer is equivalent in effect to horizontal price fixing among the retailers themselves, and therefore against public policy. It was intimated in the opinion that vertical price fixing might be valid if authorized by statute.[1]

The economic depression of the thirties, with its attendant price cutting and "loss-leader" practices at the retail level, prompted state legislatures to enact Fair Trade statutes for the avowed purpose of maintaining resale prices and rescuing small business from failure which it was thought would otherwise inevitably follow. The early statutes purported to bind only signers of resale price maintenance contracts. Underselling by those who did not sign such contracts threatened to frustrate the purpose of the Fair Trade Acts, so that today every operative state statute contains a nonsigner clause. This clause binds every vendee to sell at the minimum price or more whether or not he has signed a contract with the supplier, provided only that he have knowledge that the supplier has entered into a price stipulation contract with any vendee. This concept, alien to the law, whereby a person may be bound by a contract to which he did not give assent, indicates the desperation which impelled state legislatures in their struggle to combat a disastrous depression.

In Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 1936, 299 U.S. 183, 198, 57 S.Ct. 139, 146, 81 L.Ed. 109, the Supreme Court upheld the Illinois Fair Trade Act,[2] including its nonsigner provision, as affording "a legitimate remedy for an injury to the good will which results from the use of trade-marks, brands or names * * *." As an appropriate exercise of state police power in protecting the supplier's continuing property interest from price-cutting and "loss-leader" practices, the Court held that the act violated neither the due process nor the equal protection clauses of the Fourteenth Amendment.

The Sherman Act was changed by the Miller-Tydings Amendment, 15 U.S.C.A. § 1, which validated resale price maintenance contracts in interstate commerce, thus placing them beyond the sanctions

---

1. "Nor can the manufacturer by rule and notice, *in the absence of contract or statutory right*, even though the restriction be known to purchasers, fix prices for future sales." Dr. Miles Medical Co. v. John D. Park & Sons Co., 1911, 220 U.S. 373, 405, 31 S.Ct. 376, 383, emphasis supplied.

2. Old Dearborn construed the Illinois Fair Trade Act, Ill.Rev.Stat.1935, p. 3091, c. 140, ¶ 8 et seq., Smith-Hurd Ann.Stat. c. 121½, § 188 et seq. It is substantially identical to the Pennsylvania Fair Trade Act.

of the Sherman Anti-Trust Act. It was thought that the amendment affected nonsigners as well as signers; however, the Supreme Court in Schwegmann Bros. v. Calvert Distillers Corp., 1951, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, decided that the Miller-Tydings Amendment applied only to consensual contracts and not to nonsigner provisions. In 1952, the McGuire Act, 15 U.S.C.A. § 45(a) (3), specifically exempted nonsigner provisions from the Sherman Act.

We proceed now to discuss the question of whether an exclusive distributor for the entire United States may stipulate fair-trade prices in Pennsylvania, or whether the pricing program may be initiated only by a producer or owner of the identifying mark or brand. The Pennsylvania Fair Trade Act has been characterized as an "old-type" statute in that it does not specify who may stipulate the resale price beyond the word "vendor." The pertinent provisions of the Pennsylvania Act follow:

"§ 1. Sale of goods bearing, or vending equipment of which bears trade-mark, etc., permissible provisions

"No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, or the vending equipment from which said commodity is sold to the consumer bears the trademark, brand or the name of the producer or owner of such commodity, and which is in fair and open competition with commodities of the same general class produced by others, shall be deemed in violation of any law of the State of Pennsylvania by reason of any of the following provisions which may be contained in such contract:

"(a) That the buyer will not resell such commodity, except at the price stipulated by the vendor.

*   *   *   *   *

"§ 2. Unfair competition, defined

"Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract, is unfair competition and is actionable at the suit of such vendor, buyer or purchaser of such commodity." Act of June 5, 1935, P.L. 266, §§ 1 & 2, as amended June 12, 1941, P.L. 128, No. 66, § 1, 73 Purdon's Pa.Stat.Ann. §§ 7 & 8.

The Pennsylvania Act, in providing that the "Vendor" may initiate the pricing program, is similar to the statutes of twenty-four other states. See 1 CCH Trade Reg.Rep. ¶ 3003. The "new-type" statutes provide, typically, that the resale price may be stipulated only by the owner of the trade-mark or by a distributor specifically authorized to establish said price by the owner of such trademark. Twenty-two states have adopted the "new-type" statute. Our research discloses no Pennsylvania case deciding whether the word "vendor" includes an exclusive distributor. Several other jurisdictions with statutes similar to Pennsylvania have discussed the problem. Appellant urges for our consideration a lower court opinion from New York, Automotive Electric Service Corp. v. Times Square Stores Corp., 1940, 175 Misc. 865, 24 N.Y.S.2d 733, in which it was held that a distributor of spark plugs may not stipulate fair-trade prices. The holding of that case must be confined to its factual situation; it appeared that plaintiff was only one of more than a dozen distributors for the State of New York alone. It was the fear that each might stipulate a different price which prompted this decision.[3] There are indications

---

**3.** The court stated the rationale of the case at 24 N.Y.S.2d 740: To permit the distributor to establish the retail price "would produce intolerable confusion and very largely defeat the purpose of the statute, for if a person other than such owner can do it then a hundred others may do it and each may fix different prices. Under such a holding the owner

that the court would have reached a different result if the plaintiff were an exclusive distributor over a large area.[4] In Bourjois Sales Corp. v. Dorfman, 1937, 273 N.Y. 167, 7 N.E.2d 30, 110 A.L.R. 1411, plaintiff was exclusive distributor for the State of New York and defendant was a nonsigner who sold below prices stipulated by plaintiff. The lower court had dismissed the complaint, although the Supreme Court of the United States at its October Term had decided Old Dearborn which, as we have said, held that a *distributor* may stipulate resale prices binding upon nonsigners with knowledge without constitutional violation. The New York Court of Appeals, feeling bound by Old Dearborn, reversed the lower court judgment. It would seem that in New York an exclusive distributor may stipulate resale prices, at least where he was authorized to do so by the owner of the trade-mark.[5] Continental Distilling Sales Co. v. Famous Wines & Liquors, Inc., 1948, 273 App.Div. 713, 80 N.Y.S.2d 62.

The position of New Jersey, which also has a similar statute, is made clear by the court syllabus in Frank Fischer Merchandising Corp. v. Ritz Drug Co., Ch.1941, 129 N.J.Eq. 105, 19 A.2d 454, 455:

"1. Price maintenance contracts made under the Fair Trade Act * * by a distributor of products sold under the trade-mark of a manufacturer or producer are valid although the distributor acts without the authority or consent of the owner of the trade-mark. Schenley Products Co. v. Franklin Stores Co., 124 N.J. Eq. 100, 199 A. 402, followed."

In New Jersey, then, any distributor may stipulate resale price regardless of whether he was authorized to do so by the owner of the trade-mark.[6]

One of the ostensible purposes of a Fair Trade Act is to protect the good will inherent in a trade-marked brand from what is considered uneconomic practices, deemed in one way or another to lessen the value of the commodity in the eyes of the public. This being so, its provisions inure to the benefit of those persons affected by the diminution in the value of the good will. In most situations, this will be the producer or owner of the trade-mark. However, it is quite apparent that an exclusive distributor for a large geographic area would be affected quite seriously by the value of the good will inherent in the trade-mark.[7] In the case under consideration here, for example, plaintiff is the exclu-

of the trade-mark might find his prices fixed for him by the very cut-raters against whom the statute aims to protect such owner."

4. The court found it necessary to distinguish the opinion of Bourjois Sales Corp. v. Dorfman, 1937, 273 N.Y. 167, 7 N.E. 2d 30, 110 A.L.R. 1411, in which the New York Court of Appeals reversed the dismissal of a fair trade complaint. At 24 N.Y.S.2d 739, the court said the case being considered differed from Bourjois in that there "the plaintiff had the sole and exclusive right to use in the State of New York the trade-marks, * * * and also that the plaintiff was the owner of the business and good will in the State of New York associated with the sale and distribution of said articles. Record on Appeal, fols. 29, 30." .

5. It will be observed that this result reads into an "old-type" act the "new-type"

provision that a distributor may establish resale prices if he is specifically authorized by the owner of the mark. A lower court in Wisconsin reached the same conclusion. Hiram Walker, Inc. v. Goldman (Wisc.Cir., Milwaukee County, 1938), 1 CCH Trade Reg.Rep. ¶ 3172.53.

6. This broad interpretation of the "vendor" who may stipulate fair trade prices is shared by a lower court in California. Parrott & Co. v. Somerset House, Inc. (Calif.Super. for Los Angeles, 1937), 1 CCH Trade Reg.Rep. ¶ 3170.05. The court there said: *"The statute is sufficiently broad to include any contract made by any owner with any vendee."*

7. The Supreme Court in Old Dearborn alluded to the fact that a distributor has a proprietary interest in the good will created by the trade-mark: " * * * Good will is a valuable contributing aid to business—sometimes the most valuable

sive distributor of "Omega" watches over the entire United States. This is plaintiff's only business, and the annual sales run to several million dollars. It spends approximately $750,000 a year in advertising, designed to enhance the value of the good will attached to the "Omega" name. Certainly, any lessening of the value of this good will affects plaintiff adversely.

We do not consider it of any importance that the owner of the trademark here did not initiate the resale price maintenance contracts, or that the record does not disclose that the owner specifically authorized plaintiff to do so, for the Pennsylvania statute, unlike the "new-type" act, does not require specific authorization. We are of the opinion that an exclusive distributor over the entire United States,[8] by virtue of his very franchise, is impliedly authorized by the owner of the mark to set the resale price (see 1 Callmann, Unfair Competition and Trade-Marks, 2d ed. 1950, § 24.1(b), pages 468-469), and that the term "vendor" in the Pennsylvania Fair Trade Act is broad enough to embrace the plaintiff.

The second principal contention urged by appellant is that if the Pennsylvania Fair Trade Act is interpreted to authorize one who is not the producer or owner of the mark to stipulate a resale price binding upon a nonsigner, then the Act violates the Constitutions both of Pennsylvania and the United States.

The Pennsylvania Supreme Court in Burche Co. v. General Electric Co., 1955, 382 Pa. 370, 115 A.2d 361, held the Pennsylvania Fair Trade Act constitutional, and insofar as Pennsylvania's highest court interprets its own constitution, we are bound by that determination. It is contended, however, that in both the Burche case and the Old Dearborn case the owner of the mark set the resale price. That is accurate as to the Burche case; it is not accurate as to the Old Dearborn case, for in the latter it was the *distributor* who set the price. 299 U.S. at pages 186-187, 57 S.Ct. at page 141.[9] The distinction nonetheless is without significance for Old Dearborn decided that a *distributor* had a proprietary interest in the trade-mark and could stipulate the resale prices against nonsigners without violating the due process or equal protection clauses of the Fourteenth Amendment, and it was the existence of such a proprietary interest which was the basis of the Burche decision.

Appellant intimates that Schwegmann invites us to restudy the economic foundation of Fair Trade Acts.[10] It is true

contributing asset of the producer or distributor of commodities." 299 U.S. at page 194, 57 S.Ct. at page 145. By way of comparison, see also Scandinavia Belting Co. v. Asbestos & Rubber Works, 2 Cir., 257 F. 937, certiorari denied 1919, 250 U.S. 644, 39 S.Ct. 494, 63 L.Ed. 1186, where the court decided that an exclusive United States distributor for a foreign manufacturer had enough interest to register the trade-mark as its own.

8. There is no basis here for the fear expressed in some decisions that various distributors may stipulate different prices and thereby render a fair trade act a travesty of its purpose. Here the plaintiff is the exclusive and sole distributor.

9. Old Dearborn decided two cases considered together. The reports in the Illinois Supreme Court discuss the facts more fully and indicate clearly that it was the distributor who fixed the resale price and not the producer or owner of the trade-mark. See Joseph Triner Corp. v. McNeill, 1936, 363 Ill. 559, 2 N.E.2d 929, 930-931, 104 A.L.R. 1435. At page 937 of 2 N.E.2d the court said: " * * * Vertical price maintenance merely enables a producer, or his distributor, to set a price at which the trade-marked commodity shall be sold to the consumer." See also Seagram-Distillers Corp. v. Old Dearborn Distributing Co., 1936, 363 Ill. 610, 2 N.E.2d 940, 941, as an indication again that it was the distributor, and not the producer, who stipulated the resale price.

10. The Report of the Attorney General's National Committee to Study the Antitrust Laws (March 31, 1955), page 154, concluded that the Miller-Tydings and McGuire Act amendments should be repealed: " * * * [T]he throttling of price competition in the process of distribu-

that the Schwegmann case used strong language in criticizing the nonsigner provisions in interstate commerce,[11] but until Old Dearborn is overruled it remains the law and we are bound by it. See Sunbeam Corp. v. Wentling, 3 Cir., 1950, 185 F.2d 903.

The constitutionality of the McGuire Act is also challenged by appellant. The attack is based on reasoning expressed in the case of Sunbeam Corp. v. Richardson, D.C.W.D.Ky.1956, 144 F. Supp. 583, 592. There the court held:

"* * * [N]either the McGuire Act nor the Fair Trade Statute of Kentucky is a lawful exercise of the police power. The portion of the McGuire Act which seeks to impose fixed prices upon nonsigners of contracts contravenes these constitutional provisions [the Fifth and Fourteenth Amendments] and is invalid."

The court felt free to hold this, because it was of the opinion that Old Dearborn was concerned only with the signers of fair trade contracts, and therefore not controlling as to nonsigners. With this we do not agree. Although Old Dearborn concerned a defendant who did in fact sign a resale contract, the defendant questioned the contract's validity, and the Supreme Court assumed, for purposes of decision, that he was a nonsigner. It said, at 299 U.S. 187, 57 S.Ct. 142:

"* * * The contract was assailed by appellant below [defendant] as ineffective, and for present purposes we accept that view. It is plain enough, however, that appellant had knowledge of the original contractual restrictions and that they constituted conditions upon which sales thereafter were to be made."

This quotation, attended by the over-all rationale of the opinion based upon a continuing property right in the goodwill proprietor, not dependent upon con-

---

tion that attends 'Fair Trade' pricing is, in our opinion, a deplorable yet inevitable concomitant of federal exemptive laws. Moreover, whatever may be the underlying legislative intent, any operative 'Fair Trade' system facilitates horizontal price-fixing efforts on the manufacturing and each succeeding distributive level. And the prominent existence of a federal price-fixing exemption not only symbolizes a radical departure from National antitrust policy without commensurate gains, but extends an invitation for further encroachment on the free-market philosophy that the antitrust laws subserve.

"We therefore recommend Congressional repeal both of the Miller-Tydings amendment to the Sherman Act and the McGuire amendment to the Federal Trade Commission Act, thereby subjecting resale-price mantenance, as other price-fixing practices, to those Federal anti-trust controls which safeguard the public by keeping the channels of distribution free." See also Note, 16 U. of Pitt.L.Rev. 50 (1954).

11. "* * * If a distributor and one or more retailers want to agree, combine, or conspire to fix a minimum price, they can do so if state law permits. Their contract, combination, or conspiracy— hitherto illegal—is made lawful. They can fix minimum prices pursuant to their contract or agreement with impunity. When they seek, however, to impose price fixing on persons who have not contracted or agreed to the scheme, the situation is vastly different. That is not price fixing by contract or agreement; that is price fixing by compulsion. That is not following the path of consensual agreement; that is resort to coercion.

"* * * Therefore, when a state compels retailers to follow a parallel price policy, it demands private conduct which the Sherman Act forbids. See Parker v. Brown, 317 U.S. 341, 350, 63 S.Ct. 307, 313, 87 L.Ed. 315. Elimination of price competition at the retail level may, of course, lawfully result if a distributor successfully negotiates individual 'vertical' agreements with all his retailers. But when retailers are *forced* to abandon price competition, they are driven into a compact in violation of the spirit of the proviso which forbids 'horizontal' price fixing. A real sanction can be given the prohibitions of the proviso only if the price maintenance power granted a distributor is limited to *voluntary* engagements. * * *." Schwegmann Bros. v. Calvert Distillers Corp., 1951, 341 U.S. 384, 388–389, 71 S.Ct. 745, 747, 95 L.Ed. 1035. (Italics in original.)

tract, indicates to us that the case decided the question of constitutionality as to both signers and informed dealers alike.[12] See Sunbeam Corp. v. Wentling, 3 Cir., 1950, 185 F.2d 903, 905, vacated and remanded on other grounds, 1951, 341 U.S. 944, 71 S.Ct. 1012, 95 L.Ed. 1369, 3 Cir., 1951, 192 F.2d 7.

We do not now consider the problem which confronted us in Sunbeam Corp. v. Wentling, 3 Cir., 185 F.2d 903, that is, the applicability of the Pennsylvania statute to interstate transactions, for the injunction in question is limited to "intrastate transactions."

For the foregoing reasons, the issuance of the preliminary injunction will be affirmed.

---

12. On the general question of the constitutionality of the Fair Trade Acts and the McGuire Act, see Schwegmann Bros. Giant Super Markets v. Eli Lilly & Co.,

5 Cir., 205 F.2d 788, certiorari denied 1953, 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369.