COOPER DISTRIBUTING CO., INC., A NEW JERSEY COR-
PORATION, PLAINTIFF, v. ARNCO ELECTRONICS, A
NEW JERSEY CORPORATION, DEFENDANT.

Superior Court of New Jersey
Chancery Division

October 25, 1974.

*Mr. S. M. Chris Franzblau* for plaintiff (*Messrs. Becker-man, Franzblau & Cohen,* attorneys).

*Mr. Warren Kaps* for defendant (*Messrs. Stein & Rosen,* attorneys).

CIOLINO, J. S. C. Plaintiff brought suit and asked this court to enjoin defendant from selling Amana products at less than the fair trade price established pursuant to *N. J. S. A.* 56:4–1 *et seq.* The principal questions presented to this court for determination in this matter are (1) whether a distributor of a commodity may fair trade, and (2) if a fair trade program is promulgated, whether it can be promulgated in selected counties or a particular geographical area which comprises less than the entire State.

In the case before the court plaintiff is not the owner of the trade-mark. Defendant alleges that at the very least, if the court is to find that a distributor is to have the right to fair trade, he must get the approval of the owner of that trade-mark and he must also be the exclusive distributor.

Plaintiff is a distributor of Amana products, more particularly freezers, refrigerators, combinations and compactors, dehumidifiers and component and repair parts thereof, and generally for all products coming within the "white goods" category which are from time to time made available by Amana. In accordance with a distributor franchise agreement with Amana Refrigeration, Inc. of Amana, Iowa, dated April 1, 1971, the "distributor's territory for purposes of concentration of sales effort and appropriate stocking of products shall be: New Jersey — Bergen, Essex, Hudson, Hunterdon, Middlesex, Monmouth, Morris, Passaic, Somerset, Sussex, Union; New York — Orange, Rockland, Sullivan; Pennsylvania — Pike".

It has been stipulated as follows: that Amana products are trade-marked items in open and free competition in this general area; that these Amana products have been sold by defendant; that prior to the subject sales in this litigation

defendant received notice from plaintiff of fair trade prices established by plaintiff, which prices plaintiff intended to have maintained in the subject area; that the sales made by defendant of these goods were below the fair trade prices as per the aforementioned notification; that plaintiff has a franchise agreement with Amana which existed during the time period involved in this suit and was in existence when notice was served upon defendant; that defendant purchases its Amana products from Key Appliances, New York City, N. Y., a buying cooperative, and that those products are then shipped to defendant in New Jersey.

I find that plaintiff is a franchised distributor who sells only to retail dealers and not to end users of the products. The southern counties of the State are served by another franchised distributor located in Philadelphia, Pa.

It was shown that as a general rule plaintiff sells only in his trade area; however, at times plaintiff does sell outside of that area and also in the area wherein the Philadelphia distributor maintains its franchise. Plaintiff does not attempt to enforce its fair trade agreement in any county except in those covered by its agreement. No proofs were offered as to whether or not the franchise distributor of southern New Jersey has any fair trade agreement in this State. I find that there is no written authorization between Amana and plaintiff as to any fair trade agreement; however, proofs at trial revealed that officers and executives of Amana were made aware of plaintiff's fair trade policy and enforcement of same in the State of New Jersey and that this policy was continued after such information was made available to them. There were no facts presented which indicated that plaintiff's fair trade program was being enforced against wholesalers, but rather the facts revealed that only retail sales were affected by plaintiff's program.

Defendant, who has been in the appliance business since the early 1960's, has what it considers three different approaches to merchandising their products. It has what has been described as a wholesale business, that is, sales to trade

people who usually have a state sales tax number and to whom no state sales tax is charged. It has a limited retail business, and it has what it calls commercial accounts. These commercial accounts established in 1971 are described as sales to entities.

The manner in which these sales to various entities occurred was that defendant solicited business organizations and requested them to distribute identification cards called Arnco Buyers' Cards to their employees. These cards were then used by the employee to identify himself at defendant's place of business, and upon presentation of the Buyers' Card the wholesale price was given to that customer. If the card was not presented, then the regular retail price was used. These cards were presented with the employee's signature upon them, but no employment verification was required prior to making the purchase at the wholesale price. Sales made with the Buyers' Card, that is, the commercial account sales to employees, also included a sales tax charge to the buyer. These sales are not charged to the business entity but rather to the employee-shopper, and it is these sales which defendant has characterized as sales to a business entity.

I am satisfied that defendant's commercial accounts and method of sale to employees of business entities by the use of an Arnco Buyers' Card constituted a retail sale. These were sales not to a business organization but rather to an end consumer. It was the consumer who was billed and charged a sales tax and not his employer. Clearly, the consumer could well be someone who was not an employee but merely one who displayed an Arnco card. This was brought clearly to the attention of the court through the testimony of a shopper who purchased from defendant by use of an employee card when that shopper in fact was not the employee represented by the document. I therefore find that the commercial account sales constitute retail sales.

At the outset, the court wishes to settle the question of the constitutionality of the New Jersey Fair Trade Act. The case of *Sony Corporation of America v. Value-House, Inc.,*

121 *N. J. Super.* 461, 465 (Ch. Div. 1972), upheld the constitutionality of this act, stating, "If there is to be a change in our law, it must come either from the Legislature or our highest court." *Texas Co. v. DiGaetano,* 39 *N. J.* 120 (1963); *Lionel Corp. v. Grayson-Robinson,* 15 *N. J.* 191 (1954).

## I

It has been shown that plaintiff is a franchised distributor of Amana products and that it maintains an inventory of these products, as well as parts inventory, to service Amana retailers. Plaintiff is an Amana franchise distributor in the northern New Jersey metropolitan area and has sought to establish a uniform minimum resale price for all Amana retailers in its area, and has enforced its minimum retail schedule in court.

There was a review of the Fair Trade Law in the States of New Jersey, New York and Pennsylvania in the case of *Norman Morris Corp. v. Hess Bros.,* 243 *F.* 2d 274 (3 Cir. 1957). All three states basically have the same Fair Trade Act, which derived initially from a California statute. The court emphasized that the provisions of the Fair Trade Act inure to the benefit of those persons affected by the reduction in the value of goodwill and said, "[A]n exclusive distributor for a large geographic area would be affected quite seriously by the value of the good will inherent in the trade-mark."

Plaintiff alleges in its complaint that it instituted a fair trade program in the area of its distributorship, which encompasses 11 counties in the northern part of New Jersey, and that it is the primary distributor of Amana products in the area; however, it does not claim to be the owner or the producer of the trade-marked products, nor does it claim that it has any written authorization by Amana to initiate fair trade price minimums, although it has indicated, as previously referred to in this opinion, that it has the verbal authorization of Amana to do so. While it is understood

that the purpose of the Fair Trade Act is to protect the goodwill inherent in the trade-mark brand from a reduction in value by uneconomic practices, and that the person most often affected would be the owner or producer, a distributor for a large area would be affected quite seriously by a lessening of the value of the goodwill inherent in the trademark. The Court of Errors and Appeals stated in *Schenley Products Co. v. Franklin Stores Co.*, 124 *N. J. Eq.* 100 (1937):

> \* \* \* To assert that the contract must be made by or on behalf of the owner of the trade-mark or brand, or by or on behalf of the producer of the commodity bearing the trade-mark or brand is to import into the statute that which is clearly not within its provisions and that which is unnecessary to its operation. [at 103]

■■ One of the purposes of the Fair Trade Act is to protect the good will of a trade-mark from practices which in one way or another lessen the value of the commodity in the public eye. This being so, its provisions inure to the benefit of those persons affected by the diminution of the value in the good will. This is not limited to the producer or the owner of the trade-mark; it also encompasses a distributor for a large geographic area, as he, too, would be affected by the value of the good will inherent in the trademark. In view of the foregoing, I am of the opinion that price maintenance contracts made under the Fair Trade Act by a distributor of products sold under the trade-mark of a manufacturer or producer are valid, even though set by a distributor.

## II

Can a distributor establish fair trade policy which is not in effect throughout the entire state? Plaintiff's franchise agreement provides that its area of distribution and concentration will be 11 counties in New Jersey and certain counties in New York and Pennsylvania. It is clear from the franchise agreement that Amana reserves to itself "the right

to make sales to (a) any national, state or local government or any agency or subdivision thereof; (b) for export; (c) to another manufacturer; (d) under trade-marks other than Amana or Deep Freeze or for private label; (e) for commercial use; (f) for national accounts; (g) for governmental projects; (h) to associate distributors; and (i) to general contractors, sub-contractors, or developers of business or home building projects." It is also uncontradicted that Amana has given its distributorship of its products in the southern part of the state to a distributor originating in the City of Philadelphia.

There was testimony by the president of plaintiff corporation that in addition to plaintiff distributing Amana products in the 11 counties set forth in its franchise agreement, there was also distribution by a Garden City, New York outlet, Key Appliances, by defendant, and also perhaps by Amana Corporation of New York. As has been shown, plaintiff attempts only to enforce its fair trade program within the 11 counties assigned to it, and I question what effect this has upon uniformity not only throughout the entire State but in the counties in question when there is this multiple supply of Amana products into the area. A manufacturer or other person entitled to operate under the Fair Trade Act must subject all retailers selling this commodity to restrictions which are uniform; otherwise, discrimination results between classes of consumers and classes of retailers. Except as may be provided by the Legislature, the fixed price must apply to all consumers alike, and this can be accomplished only by binding all retailers to maintain the same minimum price schedule. The rationale under the act is to provide for equality and state-wide uniformity and to eliminate the potential of distributors in small geographic areas from each promulgating their own price schedule. Underlying the enactment of the Fair Trade Law was a desire to protect the manufacturer's good will from price cutting and the purpose of maintaining resale prices, and such purpose cannot be achieved if multiple price setting is

permitted. Here the manufacturer, Amana, has failed to exercise the power given by the statute to fix prices, and as a result of its failure to act, a situation of multiple price fixing has occurred. The minimum resale price established, pursuant to contract made under the Fair Trade Act, must be uniform throughout the State, and uniformity cannot be obtained unless the manufacturer or distributor effectively binds all retailers selling the products in an effort to maintain an established price. See *Frank Fischer Merchandising Corp. v. Ritz Drug Co.*, 129 *N. J. Eq.* 105 (Ch. 1941) where the Court said:

* * * The statute is state-wide in its application and the court cannot draw the line where competition begins in one section of the state and ends in another. The execution of one contract with a retailer in this state no matter where he is located is sufficient to bind all other retailers throughout the state, and this being so, it cannot be said that the statute calls for a distinction as to the competitive areas where the manufacturer or distributor has failed to bind all retailers to maintain the minimum price fixed by him. [at 109–110]

Because of the overlapping of supply and the multiple sources of distribution of Amana products into this State, the question of geographical limitation upon the factual picture as presented in this case must fail.

In view of the foregoing, I find that a distributor may establish fair trade prices in accordance with the Fair Trade Act of the State of New Jersey. However, I also find that the fixing of prices in an area encompassing less than the entire State must fail because it lacks uniformity. Therefore, the relief sought by plaintiff for injunction and damages, as against the defendant, must be denied. In view of these conclusions, it is unnecessary to consider the other defenses raised.

The court has considered the counterclaim of defendant and finds that it has failed to prove its cause of action and therefore the relief they seek thereunder is also to be denied.